In the Matter of the Application of GEORGE S. CHAPMAN, Claimant, for the Payment of Certain Sums of Money for Counsel Fees and Expenses, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

CONSTITUTIONAL LAW — CREATION OF MUNICIPAL INDEBTEDNESS FOR OTHER THAN MUNICIPAL PURPOSES — EXPENSES OF DEFENSE BY PUBLIC OFFICER. The payment from the funds of a county or city of the expenses incurred by a police officer in successfully defending charges preferred against him for official misconduct would constitute their application to an individual and not to a city or a county purpose, and chapter 700 of the Laws of 1899, so far as it attempts to create an indebtedness therefor, violates that provision of the Constitution (Art. 8, § 10) prohibiting a county, city, town or village from incurring any indebtedness except for county, city, town or village purposes, and is void.

*Matter of Chapman* v. *City of New York*, 57 App. Div. 583, affirmed.

(Submitted June 5, 1901; decided October 1, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 19, 1901, affirming an order of Special Term denying a motion for the appointment of a referee to hear and examine into the claim of the applicant against the city of New York.

On the 18th of December, 1899, the appellant presented his petition to the Supreme Court at a Special Term thereof, alleging in substance that on the 28th of December, 1896, while he was an officer of the police department of the city and county of New York, charges were preferred against him as such officer for official misconduct; that on the 3rd of February, 1897, such charges were dismissed by the board of police commissioners, and that by reason of the premises he was compelled to incur and expend for reasonable counsel fees and expenses the sum of $11,500.00 and upwards. He asked for the appointment of a referee to hear and examine into the claim, and report his determination to one of the justices of the Supreme Court, pursuant to chapter 700 of the Laws of 1899. Such application was denied, and the order made

accordingly was unanimously affirmed by the Appellate Division.

*William F. S. Hart* for appellant. It is not necessary for the act specifically to provide for notice to the city or county officials. No law is required to contain all the remedial provisions necessary to carry it out. ( *Wynehamer* v. *People*, 13 N. Y. 378; *Walker* v. *Sauvinet*, 92 U. S. 90; *People ex rel.* v. *Smith*, 21 N. Y. 595; *People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419; *Town of Guilford* v. *Bd. of Suprs.*, 13 N. Y. 143, 149; *People* v. *Bd. of Suprs.*, 36 Hun, 491; *Grant* v. *Courter*, 24 Barb. 232; *Stuart* v. *Palmer*, 74 N. Y. 183; *Matter of De Peyster*, 80 N. Y. 565; *People* v. *Turner*, 117 N. Y. 227.) The act does not make a gift of property to any person, and hence is not in conflict with article 8, section 10, of the Constitution. (*Brewster* v. *City of Syracuse,* 19 N. Y. 116; *Town of Guilford* v. *Bd. of Suprs.*, 13 N. Y. 143; *Bd. of Suprs.* v. *State*, 153 N. Y. 286; *Mayor, etc.*, v. *T. Nat. Bank*, 111 N. Y. 446; *W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204; *Roberts* v. *State*, 160 N. Y. 217; *O'Hara* v. *State*, 112 N. Y. 148; 51 Ohio St. 531; 64 Penn. St. 160.) That an obligation, whether enforceable or not, nevertheless exists on the part of the state in a criminal proceeding against an individual resulting in his acquittal, to reimburse him for his expenses, is illustrated by the rule in civil cases where the unsuccessful party is always taxed. (*Martin* v. *Kanouse*, 11 How. Pr. 567; *State* v. *Kemp*, 82 Mo. 213; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; 3 Cooley's Blackstone Comm. 400.) The act must be presumed to be constitutional, and should not be declared void unless it constitutes a clear and substantial departure from the provisions of the fundamental law. (*Matter of G. El. Ry. Co.*, 70 N. Y. 361; *People* v. *Budd*, 117 N. Y. 1; *People ex rel.* v. *Terry*, 108 N. Y. 7; *People ex rel.* v. *Bd. of Suprs.*, 147 N. Y. 1; *People ex rel.* v. *Dayton*, 55 N. Y. 367; *Dermott* v. *State*, 99 N. Y. 101; *Penn. R. Co.* v. *Riblet*, 66 Penn. St. 164; *People* v. *N. Y. C. R. R. Co.*, 34 Barb. 123: 3 Am. & Eng. Ency. of Law,

674 ; *F. R. S. Co.* v. *Foster,* 5 Ga. 194 ; *M. U. Co.* v. *Brown,* 18 N. E. Repr. [Ohio], 591.)

*John Whalen, Corporation Counsel (Theodore Connoly* of counsel), for respondent.    The statute in question is unconstitutional. (*Matter of Greene,* 166 N. Y. 485 ; 55 App. Div. 475 ; *Matter of Fallon,* 28 Misc. Rep. 748 ; *Matter of Straus,* 44 App. Div. 425 ; *Matter of Jensen,* 44 App. Div. 509.) The police commissioners were not agents or servants for whose acts the city is liable. (*Woodhull* v. *Mayor, etc.,* 150 N. Y. 450.)    The power of the legislature to compel municipal corporations to recognize and pay debts or claims not binding in strict law, and which, for technical reasons, could not be enforced in equity, is confined to such as are just and equitable in their character and involve a moral obligation. (*Bd. of Suprs.* v. *State,* 153 N. Y. 279 ; *Brewster* v. *City of Syracuse,* 19 N. Y. 116 ; *Darlington* v. *Mayor, etc.,* 31 N. Y. 164 ; *Brown* v. *Mayor, etc.,* 63 N. Y. 239 ; *Mayor, etc.,* v. *T. Nat. Bank,* 111 N. Y. 446 ; *W. I. B. Co.* v. *Town of Attica,* 119 N. Y. 204 ; *Cole* v. *State,* 102 N. Y. 48 ; *O'Hara* v. *State,* 112 N. Y. 146.)    There are limits to the power of taxation, and whether in a given case the legislature has exceeded its powers is a judicial question. (*Matter of Greene,* 166 N. Y. 485 ; *Weismer* v. *Vil. of Douglas,* 64 N. Y. 91 ; *Bush* v. *Bd. Suprs.,* 10 App. Div. 542 ; *Bertholf* v. *O'Reilly,* 74 N. Y 509 ; *Matter of Jacobs,* 98 N. Y. 98 ; *Spencer* v. *Merchant,* 100 N. Y. 585 ; *Allen* v. *Jay,* 60 Me. 124 ; *State* v. *Switzler,* 143 Mo. 287 ; Cooley on Taxn. [2d ed.] 55, 103 ; Cooley on Const. Lim. 598.)    The act is unconstitutional as being in violation of section 10 of article 8 of the present Constitution. (*Matter of Greene,* 166 N. Y. 485 ; 55 App. Div. 475.)    This act is a giving of money by the city to an individual. (*Kempster* v. *City of Milwaukee,* 103 Wis. 421.)    Any gift by the legislature of the city's money to an individual is within the prohibition of the Constitution. (*Lake County* v. *Rollins,* 130 U. S. 662 ; *Matter of Greene,* 166 N. Y. 485.)    The indebtedness created by the statute is not for a city purpose. (*People ex*

*rel.* v. *Kelly,* 76 N. Y. 475; *Matter of Mayor, etc.,* 99 N. Y. 569; *S. P. & P. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *People ex rel.* v. *Coler,* 166 N. Y. 1; *Matter of N. F. & W. Ry. Co.,* 108 N. Y. 375.)

VANN, J.  The statute under which this proceeding was instituted provides for the appointment of a referee " to hear, examine into and report" the amount of reasonable counsel fees and expenses paid or incurred by a city or county officer in successfully defending himself in any trial or proceeding " to remove him from office or    *    *    *    to convict him of any crime" alleged to have been committed " in the performance of or in connection with his official duties," and that the amount allowed by the referee, when confirmed by the court, be paid by the issue of revenue bonds to be included in the taxes levied for the following year in the city or county affected.  (L. 1899, ch. 700.)  Another part of the act provides for the payment of similar claims by the state; but, as the validity of that part is not involved in this appeal, no further allusion need be made to it.

While other questions have been discussed before us, the main question is whether the legislature had power, under the Constitution of our state, to pass this statute.  That question has been passed upon several times by the Supreme Court, and the conclusion reached by every judge who considered it is that the statute is unconstitutional.  (*Matter of Straus,* 44 App. Div. 425; *Matter of Jensen,* 28 Misc. Rep. 379; affd., 44 App. Div. 509; *Matter of Chapman,* 57 App. Div. 582; *Matter of Fallon,* 28 Misc. Rep. 748; *Matter of Labrake,* 29 Misc. Rep. 87.)  Our examination has led us to the same result, and, as the discussion of the subject has been so thorough and able in the courts below, it is necessary for us to do little more than announce our conclusion.

In a case which arose under the Constitution of 1846 before it was amended, expressions were used by learned judges of this court which went beyond the requirements of the decision they made.  (*Town of Guilford* v. *Bd. of Supers.,*

*Chenango Co.*, 13 N. Y. 143.)    All that was actually decided was
that the legislature had power to require a board of supervis-
ors to assess upon the taxable property of a town the amount
which highway commissioners had been compelled to pay for
costs in an action commenced by them pursuant to the direc-
tion of the voters of the town.    The payment of such a claim
was not an act of charity, as it rested on a strong moral obli-
gation.    It was, however, declared in one of the opinions that
" the Legislature has the right to appropriate the public
moneys for local or private purposes, and to impose a tax upon
the property of the whole state or any portion of the state, or
any particular or specified kind of property."    In another
opinion it was said : " The Legislature is not confined in its
appropriation of the public moneys or of the sums to be
raised by taxation in favor of individuals to cases in which a
legal demand exists against the state.    It can thus recognize
claims founded in equity and justice in the largest sense of
those terms or in gratitude or charity."    Subsequent cases,
following the *dicta* rather than the decision, led to results
which, as it is said, induced the people in 1874 to amend the
Constitution by adding sections ten and eleven to article eight.
Section 11 was amended in 1884 by adding further provisions,
and the substance of both sections appears in the revised Con-
stitution of 1894.    (Art. 8, sections 9, 10.)    Section nine is
not now important, as it relates to the giving or lending
of the credit or money of the state, but section ten makes
it a part of our fundamental law that " no county, city,
town or village shall hereafter give any money or property,
or loan its money or credit to or in aid of any individual, asso-
ciation or corporation,    *    *    *    nor shall any such county,
city, town or village be allowed to incur any indebtedness
except for county, city, town or village purposes."    It has
been held that this provision does not prevent the legislature
from authorizing the payment by a municipal corporation of
a claim which, although it could not be enforced by the
courts, is founded in justice, supported by a moral obligation,
and could have been legally created if the proceedings of the

local authorities had been regular. ( *Wrought Iron Bridge Co.* v. *Town of Attica*, 119 N. Y. 204–211.) So it may be argued that payment of a claim otherwise valid, but against which the Statute of Limitations had run in favor of a municipal corporation, or of one for money expended or services performed for the benefit of a city without lawful authority, might be authorized or required by the legislature. (*New Orleans* v. *Clark*, 95 U. S. 644 ; *Friend* v. *Gilbert*, 108 Mass. 408; *Brewster* v. *City of Syracuse*, 19 N. Y. 116 ; *Brown* v. *Mayor, etc., of N. Y.*, 63 N. Y. 239 ; *Mayor, etc., of N. Y.* v. *Tenth Nat. Bank*, 111 N. Y. 446.) If a legal liability to pay once existed, but has been suspended or barred in some technical way short of substantial satisfaction, a moral obligation to pay still exists, which is recognized both by statute and common law. (Code Civ. Pro. section 395 ; *Tebbetts* v. *Dowd*, 23 Wend. 379–382 ; Buswell's Stat. of Lim. section 36.)

In the case before us, however, no benefit was conferred upon the city, and there was never a legal or moral obligation on the part of the city to pay the claim in question. For time out of mind, in all governments where the common law prevails, a person prosecuted for crime has been compelled to pay his own expenses when he had the means of doing so. (*People ex rel. Brown* v. *Bd. of Supers., Onondaga Co.*, 4 N. Y. Cr. Rep. 102 ; affirmed, 102 N. Y. 691.) If without means the counsel assigned by the court served without pay, except under a recent statute a moderate allowance may be made in a capital case. (L. 1897, ch. 427 ; Code Cr. Pro. section 308.) This exception is founded on the theory that a fair trial cannot be had without the aid of counsel, and that money paid from public funds to counsel appointed by the court for a prisoner without means, is paid for a public purpose. The proceeding instituted against the appellant was not a prosecution for crime, but to discipline or remove him for misconduct as a public officer. There was no authority, statutory or otherwise, to appoint counsel to defend him, and no attempt was made to do so. It was necessary for him to employ and pay his own counsel, as has always been the case with others

similarly situated. Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense. Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even unjust attempts to enforce the law, the same as he assumes the burden of taxation. As was said in *Matter of Jensen* (*supra*), it is " a part of the price he pays for the protective influence of our institutions of government." Asking for aid to pay the expenses of a defense already made from one's own resources, is like asking for aid in the payment of taxes or the discharge of any public burden. It is not a city or county purpose, but a mere gift.

The courts have found it difficult to define a county, city, town or village purpose, and have, as a rule, proceeded by the process of exclusion. (*People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475–487; *Matter of Mayor, etc., of N. Y.*, 99 N. Y. 569–585; *Matter of Niagara Falls and Whirlpool Ry. Co.*, 108 N. Y. 375–385.)

In *Sun Printing & Publishing Association* v. *Mayor, etc., of N. Y.* (152 N. Y. 257–265) the following general definition was laid down : " The purpose must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the legislature."

In *Bush* v. *Bd. of Supers., Orange Co.* (159 N. Y. 212–217) it was declared in substance that the payment of a claim " which there was no legal or moral obligation on the part of " a town to pay, is not a town purpose, and " is in conflict with the provision of the Constitution * * * which forbids the town from giving any money to or in aid of an individual."

In *Matter of Greene* (166 N. Y. 485–494) the court alluded to "the distinction between the gratuity which the Constitution now forbids and the meritorious claim which it permits municipal bodies to satisfy." In *Bd. of Supers., Cayuga Co ,* v. *State* (153 N. Y. 279–293), which involved the validity of an act providing for the reimbursement of a county by the state for the expenses of trials for crimes committed in a state prison, it was held that such provision "was not a gift of money by the state, but was intended as a discharge of an equitable obligation, although unenforceable, which, in the judgment of the legislature, rested upon the state."

In *Roberts* v. *State* (160 N. Y. 217) no definition was attempted, but the doubt expressed on page 224 is not without significance.

As a city purpose is of necessity a public purpose, limited or applied to a city, the definition of a public purpose by the Supreme Court of the United States, in an important case, is worthy of careful attention. That learned court declared that "there can be no lawful tax which is not laid for a public purpose. It may not be easy to draw the line in all cases so as to decide what is a public purpose in this sense and what is not. It is undoubtedly the duty of the legislature which imposes or authorizes municipalities to impose a tax, to see that it is not to be used for purposes of private interest instead of a public use, and the courts can only be justified in interposing when a violation of this principle is clear, and the reason for interference cogent. And in deciding whether in a given case the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people, may well be held to belong to a public use and proper for the maintenance of good govern-

ment, though this may not be the only criterion of rightful taxation." (*Loan Association* v. *Topeka*, 20 Wall. 655–664. See, also, Dillon Mun. Corp. [4th ed.] sections 75, 76; Cooley's Const. Lim. [5th ed.] 283, 286; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1–44.)

Tested by these definitions, and we find none more liberal, payment of the appellant's claim, which arose nearly three years before the statute in question was passed, is not a city or county purpose. His defense was for his own benefit, not for the benefit of the city. It was a private matter of his own, the same as if he had been sued by the city in an action at law, and had succeeded in his defense. As we have seen, there was no legal liability or moral obligation on the part of the city to pay his expenses, which were not necessary for the common good and general welfare of the municipality, nor public in character, nor, so far as appears, sanctioned by its citizens. It was in no sense a meritorious claim from the standpoint of public interest or good government, nor one the payment of which is sanctioned by the history of legislation or the acquiescence of the people. He made an unprecedented demand, and its novelty, when the numerous opportunities for the presentation of such claims for time out of mind are considered, is almost a demonstration that it was not incurred for a public purpose. While vast numbers of people during the history of the state have had claims similar in principle, seldom, if ever before, has one been bold enough to ask for legislation such as that under consideration.

While we are always reluctant to interfere with an act of the legislature, the command of theConstitution is supreme, and we are compelled to obey it by adjudging that the statute in question, in so far as it authorizes the payment of the appellant's claim from the funds of the respondent, is unconstitutional and void. (*Weismer* v. *Village of Douglas*, 64 N. Y. 91.)

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, LANDON, CULLEN and WERNER. JJ., concur

Order affirmed.