## MESSMORE v. KRACHT.

Municipal Corporations—Counties—Board of Supervisors—
 Sheriff — Public Officers — Malicious Prosecution — Reim-
 bursing Officer for Attorney's Fees.

> The board of supervisors may reimburse a deputy sheriff for attorney's fees paid out by the deputy in defending himself against an action of malicious prosecution brought against him by one whom he had arrested on a warrant fair on its face charging a violation of the compulsory school law, where the officer acted in good faith and was held not liable in the action. Act No. 74, Pub. Acts 1907. Ostrander, McAlvay, and Stone, JJ., dissenting..

Certiorari to Macomb; McKay, J. Submitted June 4, 1912. (Calendar No. 24,997½.) Decided October 1, 1912.

Mandamus by Howard O. Messmore against William F. Kracht to compel relator to sign and deliver to relator an order for money allowed to relator on a claim presented to the board of supervisors. An order denying the writ is reviewed by relator on certiorari. Reversed.

*Bert V. Nunneley* (*Warren S. Stone*, of counsel), for relator.

*Erskine & Lungerhausen* (*Wm. T. Hosner*, of counsel), for respondent.

MOORE, C. J.   The relator was a deputy sheriff duly appointed.   A Mr. Zimmerman was proceeded against for a violation of the compulsory school law.   Relator, together with one Kandt, who was truant officer of Macomb county, arrested said Zimmerman by virtue of a warrant fair on its face issued by a justice of the peace for an alleged violation of the school law.   Mr. Zimmerman was acquitted of the charge because no legal notice had been served on him as required by law.   After his acquittal, Mr. Zimmerman brought an action against both of these officers for malicious prosecution and abuse of process, in the defense of which both were successful. Respondent does not question that these officers were proceeding as they supposed in the due discharge of their duties.   After the termination of the suit against him, relator presented to the board of supervisors of Macomb county a claim for his expenses incurred in that litigation involving counsel fees.   No question as to the reasonableness of the attorney's bill is raised.   The board of supervisors were advised as to the nature of the claim, and allowed it at the sum of $120.   The regularity of the proceedings before the board of supervisors is not questioned.   Respondent William F. Kracht is county clerk of Macomb county and clerk of the board of supervisors.   On demand made he refused to sign and deliver to relator his order for the money so allowed him.   Relator applied to the circuit court for the couty of Macomb for a writ of mandamus to compel respondent so to do.   The said circuit court denied the writ, and the cause has been brought to this court on certiorari.

It is the claim of relator that the only question involved is:

"Has the board of supervisors the power, if it so determines, to reimburse a deputy sheriff for expenses incurred by him in successfully defending himself in litigation growing out of the good faith performance of his duties as such officer?"

The rule has been stated as follows:

"It is within the discretionary power of a municipality to indemnify one of its officers against liability incurred by reason of any act done by him while in the bona fide discharge of his official duties, and the municipality has the right to employ counsel to defend the officer, or to appropriate funds for the necessary expenses incurred by him in such defense, or pay a judgment rendered against him." 28 Cyc. p. 454.

In the case of *Sherman* v. *Carr*, 8 R. I. 431, the mayor of the city was sued upon a charge of false imprisonment, and he made defense upon the ground that the acts complained of were committed by him in his capacity as mayor. A verdict having been recovered against him, the common council made an appropriation to reimburse him, and suit was brought by a taxpayer to enjoin payment of the same. In disposing of the case, the Rhode Island court said, in part:

"The terms of the city charter forbid the council, after the enumeration of certain prohibitions having no direct resemblance to the matter in hand, to 'do or transact any matter except such as belong to the legitimate duties of a municipal body within its own province,' 'or to vote money for any object except for the regular, ordinary and usual expenses of the city.' Is it then a legitimate duty? Is it then one of the usual and ordinary expenses of the city to protect its officers who, while exercising in good faith the functions of their office, have been found by the verdict of a jury to have exceeded the lawful powers of that office, and to have trespassed on the rights of a citizen? If the power to indemnify an officer under these circumstances does not rest in that body who appropriate the money for all the legitimate duties of a municipality within its own province, the various executive officers of a city perform their duties at the peril of an individual responsibility for all their mistakes of law and of fact, however honest and intelligent they may be, and also at the peril of the possible mistakes of a jury naturally jealous of the rights of the citizen, when brought in conflict with the exercise of official power. If the officer is thus responsible, he will naturally be too cautious, if not timid in the exercise of his powers—powers which must be frequently exercised for the protection of society before and not after a thorough

investigation of the case in which he is called upon to act. On the other hand, it may be urged, if the officer has the right to fall back upon the treasury of the city, there is danger that he will become reckless and overbearing in the exercise of the powers of his office. It would seem, therefore, to be the wisest to leave the indemnification of the officer to the discretion of those who represent the interests of the city, that, on the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution. Under such a state of the law, every executive officer of the corporation would feel that he was acting as the servant and agent of that corporation, relying upon their good faith and good judgment toward him, so long as he acted in good faith and good judgment in the discharge of his duties.

"This distribution of power, which would be practically the wisest in the administration of municipal affairs, is the one which we understand to be in accordance with the existing law and long continued practice in this State. It is one in which many decisions in a neighboring State, whose system of statute law and judicial decisions is most like our own, show to have been frequently upheld in the courts of that State. We are not furnished with any authorities which tend to establish a contrary doctrine. We know of no case in which, while the officer continues to act in behalf of the community, it cannot indemnify him. We therefore find that the appropriation of money in this case by the city council of Newport was within their authorized powers, and it is not for us to inquire as to the wisdom or discretion with which those powers were exercised. We must therefore deny the injunction."

In the case of *Abels* v. *Ingham County Sup'rs*, 42 Mich. 526 (4 N. W. 206), wherein a private detective sought pay for services in apprehending a criminal, though not controlling, contains the following language:

"We make no question that relator performed valuable services honestly, but he performed them as a private citizen, and the board have full discretionary authority to make such allowances as they may think proper. But they are not legally compellable to make any."

See *Pistorius* v. *Saginaw County Sup'rs*, 51 Mich. 125 (16 N. W. 262). In disposing of the case, the trial judge used the following language:

"A policeman or marshal are officers of the municipality in enforcing its ordinances. They are appointed by the municipality, and are subject to removal by the municipality for any malfeasance or misconduct of duty. A sheriff and his deputies are not under the control of the county, nor of the board of supervisors, but are officers of the State, independent of the board of supervisors and the county, in the performance of their duties. The subject-matter in this case was the attempt to enforce the compulsory school law of the State of Michigan. The duty of enforcing this law is specifically imposed upon the officer by statute, and the county of Macomb, the board of supervisors thereof, has no duty to perform, and has absolutely no control or direction over the officer in the performance of his duty relative thereto. But the officers of the State of Michigan have a duty to perform in the enforcement of the compulsory school law;  *  *  *  that the action of the board of supervisors in allowing relator's claim was void and of no effect; that it was the duty of respondent to refuse to sign a warrant for the same."

Counsel for respondent cite many cases which they claim sustain the action of the circuit judge. An examination of them will show they are not controlling. They may be divided into two classes: (1) Either the case for which indemnity was sought was a case of the public against the party claiming indemnity; *i. e.*, impeachment or investigation. Such cases are *People* v. *Lawrence*, 6 Hill (N. Y.), 244; *Merrill* v. *Plainfield*, 45 N. H. 126; *Butler* v. *City of Milwaukee*, 15 Wis. 493; *Chapman* v. *City of New York*, 168 N. Y. 80 (61 N. E. 108, 56 L. R. A. 846, 85 Am. St. Rep. 661). (2) Or the matter on which the officer was acting and out of which the litigation for which indemnity is sought grew was a private matter, and the officer was acting for private individuals, and not for the public, much as the sheriff acts in serving civil process. Such cases are *Gregory* v. *City of Bridgeport*, 41 Conn. 76 (19 Am. Rep. 458); *Smith* v.

*City of Nashville*, 4 Lea (Tenn.), 69; *Follensbee* v. *St. Clair County Sup'rs*, 67 Mich. 614 (35 N. W. 257). The truant act, so called, is Act No. 74, Pub. Acts 1907. Sections 2 and 3 expressly provide for the appointment of a county truant officer and the payment of his salary and expenses by the county, and expressly makes violation of the act a misdemeanor. Section 4 makes it the duty of justices of the peace and recorders' courts to issue warrants and commands the magistrate or justice to proceed to hear and determine the case in the same manner as is provided in the statute for other cases under his jurisdiction.

We think the view of the trial court is too restricted. The people of the State have long believed in establishing schools in which the children should be educated. The taxpayer, though having no child, is taxed to support the public schools. To insure the education of all the children, the truant act, so called, was passed. These measures are justified upon the theory that in a republic all the citizens should be so educated as to be able, when attaining maturity, to intelligently act upon the questions awaiting solution by adult citizens. The locality where the school is located, the county, and the State are all interested in having the school laws enforced. We think it was within the discretion of the board of supervisors to allow this claim, and it is not for the clerk of the board to nullify their act.

The action of the court below is reversed, and the writ of mandamus should issue as prayed, with costs to the relator.

STEERE, BROOKE, and BIRD, JJ., concurred with MOORE, C. J.

OSTRANDER, J. (*dissenting*). In my opinion supervisors have no power to appropriate money to reimburse a sheriff, or his deputy, for expenses incurred in defending a suit based upon an alleged improper arrest upon a criminal warrant, except in cases where the county, as a

municipality, is interested in or has brought about the arrest. A county is not so interested in the arrest of one charged with violating the school laws of the State. A sheriff is, it is true, elected in each county, and, in making arrests upon criminal warrants, is performing an official duty; but his official responsibility to the county is not like the responsibility of a policeman or mayor to a city. He does not, in making arrests, execute any law or ordinance of the county. And the cases will be few in which his actions in executing criminal warrants involve any county interest.

The action of the circuit court should be affirmed.

STONE and MCALVAY, JJ., concurred with OSTRANDER, J.