BOARD OF COMMISSIONERS OF NATRONA
COUNTY v. CASPER NATIONAL BANK

SAME v. WYOMING NATIONAL BANK OF
CASPER

(Nos. 2132, 2133; September 12, 1940; 105 Pac. (2d) 578)

134

For the plaintiff in error, there was a brief and an oral argument by *Vincent Mulvaney* of Casper.

For the defendants in error, there was a brief by *G. R. Hagens, R. H. Nichols, Durham & Crowell, E. E. Enterline* and *Edward E. Murane,* all of Casper, and oral argument by *Messrs. Hagens, Enterline* and *Nichols.*

BLUME, Justice.

These suits were consolidated for the purpose of hearing. They were brought to recover judgment upon three certificates of indebtedness (warrants) issued by the county commissioners of Natrona County, each for the sum of $2500, issued respectively to E. E. Enterline, E. Paul Bacheller and Edward E. Murane, attorneys at law, each dated June 7, 1928. Judgment was rendered by the trial court in favor of the plaintiffs, and from that judgment the county has brought the case to this court by petition in error.

The certificates of indebtedness were issued on June 7, 1928, pursuant to a resolution of the then Board of Commissioners of Natrona County, adopted on that day and spread on the records of the county, as retainers and attorney fees of the respective payees of the certificates to defend four different actions brought in March and April, 1928, as follows: The first action was one brought by W. F. Henning, a tax-payer, on behalf of himself and other tax-payers against the board of county commissioners of Natrona County, Earle G. Burwell, J. E. Scott and Earle D. Holmes, as county commissioners of Natrona County, Earle G. Burwell as chairman of the board and the county clerk and county treasurer, to enjoin the payment of $40 per month to the county treasurer in addition to her regular salary of $166.66 per month, for services

claimed by her to have been performed for the county other than her duties as county treasurer. It was alleged that for a number of months this additional salary has been paid to her, contrary to the advice of the county attorney, given to the county commissioners; that she was not entitled to more than the regular salary provided by law, and that she in fact had not rendered any services other than the services required by law to be rendered by her. The petition contains the following commencing paragraph: "Comes now the plaintiff and suing on behalf of himself and of all other tax payers of Natrona County, Wyoming, similarly situated, for cause of action against the above named defendants and each of them, and not suing the county of Natrona, in the State of Wyoming, but suing among other defendants the Board of County Commissioners of said county as an official board of said county, says:". The second action was similar in all respects to the first action, containing the same commencing paragraph, differing only in the fact that it involved payment of $40 per month to the county clerk, in addition to the regular salary of $166.66 per month. The third action was a tax-payer's suit, brought by George Patillo against the same defendants as mentioned in the first above named suit, and others, to enjoin the payment to certain individuals, named in the suit, engaged in valuing property in Natrona County for assessment purposes, alleging that the sum of approximately $1000 per month had, for a number of months, been paid and was being paid, to these parties for the services mentioned, without presenting a claim therefor; that plaintiff is the assessor of the county, and that the individuals mentioned have not been employed by him. The petition contains the same commencing paragraph which is contained in the two actions above mentioned. The fourth action was a tax-payer's suit, brought by W. F. Henning against

Earle G. Burwell, J. E. Scott, Earle D. Holmes, and the Board of County Commissioners of Natrona County, alleging that the individuals named constitute the Board of County Commissioners of Natrona County; that they have fraudulently conspired since November 1926 to extract from the treasury of the county large sums of money for their individual benefit to which they are not legally entitled, setting forth various sums of money which were thus unlawfully taken by the defendants from the county, and allowed by the board to them, over and above the regular salary of $200 per annum, and asking that the defendants be restrained from continuing to do so.

After the commencement of these suits, namely, on May 22, 1928, the county attorney of Natrona County entered his appearance in each of these cases, in which he recited that the interests of Natrona County were not adverse to those of the plaintiff in the case, and that for that reason he had not and did not intend to file any motion, demurrer, answer or other pleading on behalf of Natrona County. The board, accordingly, determined to engage private counsel, and did so, in accordance with the resolution of June 7, 1928, already mentioned above. Motions were filed in these cases by the private counsel thus retained, but none of them were tried, and were dismissed on September 11, 1929, pursuant to the stipulation of the parties which recited that the personnel of the board had changed and that the practice complained of in the various petitions had been discontinued, so that the questions involved had become moot. The personnel of the board had, it seems, been changed prior to September 7, 1928, and on that day the board of county commissioners adopted a resolution rescinding the resolution of June 7, 1928, and cancelling the warrants issued to the attorneys above mentioned, and instructing the county treasurer not to pay them. The certificates had been assigned to

banks, who in turn assigned them to one Robertson. Robertson presented them for payment, which was refused, though there was sufficient money in the treasury, and he thereupon commenced an action in mandamus against the county treasurer to compel such payment. After an adverse ruling in the district court against the plaintiff in that action, the case was appealed to this court. The judgment of the district court was affirmed. State ex rel. v. Patterson, 47 Wyo. 416, 38 P. (2d) 617. Thereafter and in the months of June and July, 1936, the present actions were commenced, the Wyoming National Bank, as assignee, suing the board of commissioners of Natrona County upon the certificates of indebtedness issued to Messrs. Enterline and Bacheller and the Casper National Bank suing upon the certificate issued to Mr. Murane. A demurrer was filed in the first of these actions on the ground that the petition does not state facts sufficient to constitute a cause of action. This was apparently on the ground, argued in this court, that the petition shows on its face that it is barred by the statute of limitations. The demurrer was overruled, and that ruling is assigned as error in the motion for a new trial. The answers in the case differ somewhat. Only the points argued herein need be mentioned. The first defense pleads res judicata, by reason of the mandamus proceeding above mentioned. A demurrer filed to this defense was sustained. The second defense, after setting out the facts leading up to the issuance of the certificate of indebtedness, proceeds: "That the actions wherein" the said attorneys were "by said resolution employed were not actions against said Natrona County, Wyoming, but were against the individual members of said Board, and said actions sought to restrain said individual members of said board of county commissioners of Natrona County, Wyoming, from engaging in certain practices alleged by said

actions to be illegal, and without the authority of said board of county commissioners of Natrona County, Wyoming. * * * That said actions, and each of them, were subsequently dismissed upon a stipulation entered into by the parties through their respective counsel, which said stipulation recited, among other things: 'The practices sought by plaintiff's petition to be restrained having been discontinued.' " As a third defense, it was alleged, in substance, that the value of the services rendered would be of less value than $500 for each of the attorneys employed. These specific allegations were denied in a reply. The court, as already stated, gave judgment for the plaintiffs. A motion for a new trial was filed, which was overruled, and the board has prosecuted this action by petition in error. Some additional facts will be stated hereafter.

■ A motion to dismiss has been filed in the case on the ground of violation of Rule 37. Numerous objections have been raised. It would not subserve any good purpose to discuss them in detail. The greatest objection to the abstract of the pleadings is the fact that it sets out the original defense, the first amended answer, the second amended answer, as well as the third amended answer in the Casper National Bank case. It was not necessary to set out any of these answers except the last, since no point is raised in connection with the others. It is objected that the abstract does not show the steps which show the jurisdiction of this court, or whether this is an appeal or a proceeding in error. It contains sufficient to indicate that this is a proceeding in error, but the motion for a new trial, or the ruling thereon, are not set forth in the abstract. Particularly in view of the limited points argued herein by the county attorney, we do not find that the abstract is so defective as to require a dismissal of the proceeding here. However, no costs for the brief of

counsel for the county, and only half of the costs for the bills of exceptions, will be taxed.

■ It is contended that the court erred in overruling the demurrer in the case brought by the Wyoming National Bank, claiming that the action herein is barred by the provisions of section 89-410, Rev. St. 1931, which provides that an action must be brought "within eight years upon a contract not in writing either express or implied; an action upon a liability created by statute other than a forfeiture or penalty." Counsel for the county contends that this is an action upon a liability created by statute. We think he is in error, and that this action is rather governed by section 89-409, Rev. St. 1931, which provides that an action upon a contract must be brought within ten years. It is stated in 37 C. J. 755 that "county or town warrants not under seal are governed as to the period of limitations by the statute governing other instruments for the payment of money in the absence of legislation expressly providing a different limitation."

■ It is further contended that when it was held in the case of State ex rel. v. Patterson, supra, that the plaintiff in that action was not entitled to a writ of mandamus asked therein, that constituted an adjudication on the merits against the plaintiffs herein. The contention cannot be upheld. A cursory examination of the decision in the case mentioned shows that no attempt was made to decide whether or not the certificates in question were legally issued. We merely held that under the circumstances the plaintiff in that case was not entitled to a writ of mandamus. No merits of the controversy here were adjudicated and could not be a bar to the present action. 15 R. C. L. 982.

■ The general right of the board of county commissioners to engage private counsel, in the absence of the county attorney, or his refusal to act, as he did

in this case, is not questioned. Provision for such right is made by section 29-306 and 30-402, Rev. St. 1931, and see Appel v. State ex rel., 9 Wyo. 187, 61 Pac. 1015. The section of the statute last quoted provides that in such case the necessity for such employment shall appear in the record of the board. This provision was sufficiently complied with. It is contended, however, that the actions for the defense of which Messrs. Enterline, Bacheller and Murane were engaged by the county commissioners were not actions against the county, but actions against the individuals composing the board of commissioners, and that, accordingly, the board had no authority to engage them to defend the actions. That is the important question in the case. Counsel for the plaintiffs state that "it was obligatory upon the board, in seeking to avoid the contract of employment of the attorneys, to allege and prove a state of facts showing fraud and illegality," citing Goldberg v. Miller (Wyo.), 96 P. (2d) 570; Smith v. Stone, 21 Wyo. 62, 82, 128 Pac. 612, and other cases. We think, however, that the allegation that the cases for which the attorneys were employed were cases against the individuals who happened to constitute the board, is a pleading of an ultimate fact, which, if sustained by the evidence, might show, depending on the nature of the case, that the employment was in fact illegal. It would seem to be clear that in order to determine this question, it is necessary that we separately consider the first three suits above mentioned from the last, the fourth suit, for facts appear in the last suit which do not appear in the first three. The mere assertion in the pleading or in this court that the county was not sued, but that the suit was only against the individuals, does not make it so. The facts govern. In the first three of the above suits the defendants were the board of county commissioners of Natrona County, and certain individuals, as commissioners. It

is argued that the title of the board was given incorrectly; that the suit should have been against the board of commissioners of the county of Natrona, instead of the board of commissioners of Natrona County, in accordance with the provisions of section 29-305, Rev. St. 1931, which provides that "in all suits or proceedings by or against a county, the name in which the county shall be sued shall be 'the board of the county commissioners of the County of ..........................' " The variance, however, is too trivial to be noticed by the court. On their face the actions were not against the individuals composing the board. Of course, persons may not be parties in name but may be so in fact. When a man has a personal interest in a suit which can be affected, destroyed or upheld therein, he is an actual party to it, from a practical standpoint, as effectually as though named therein as such. In the case at bar there is neither an allegation nor a showing that the officials, as individuals, had a personal interest in the three suits above mentioned, so that it is difficult to see how it can be said that the suits were against them individually. As to whether or not, in view of that situation, they had the power, as a board and as representing the county, to employ the attorneys is an altogether different question which has been neither presented nor argued in this court, and apparently was not presented in the trial court. No testimony was introduced to show the truth of the allegations in the petitions in these suits. On the contrary, it was admitted in the trial of this case by the predecessor of the present county attorney that the certificates of indebtedness were issued for a valuable consideration. The stipulation was not questioned in the trial court by the present county attorney, and it is not questioned in this court, and the trial court may well have concluded therefrom that there was neither fraud nor want of good faith nor illegality in the transaction.

The illegality of making payments to the county clerk, county treasurer, or tax-surveyors is a different question from that of the illegality of employment of attorneys herein, and depends upon different principles of law which have not been presented or argued. The contention of the county attorney here considered must, accordingly, be overruled as to the three suits just mentioned.

■ An entirely different situation, already foreshadowed by what we have heretofore stated, is presented in the fourth of the foregoing suits. Not only were the members of the board sued therein individually, but they were also charged with misconduct in fraudulently conspiring to extort money from the treasury of the county for their individual benefit to which they were not legally entitled. These allegations show that they were personally and as individuals vitally interested in the suit. It is true that the board as such was also made a party to the suit, but that cannot be considered as altering the fact that it was essentially one against the individuals. The stipulation last above mentioned is not, we think, inconsistent with that conclusion, at least not necessarily so. But even if it were, it could not, of course, change an indisputable, substantially a physical, fact appearing on the face of the petition in the suit—a fact not appearing in the other three suits. Many cases hold that a municipality, board of commissioners and similar bodies, may pay the expenses, including attorney fees, incurred in suits brought against officials for acts, though beyond their authority, committed by them while in the honest discharge of their duties. 43 C. J. 890; McQuillan, Municipal Corp. (2nd ed.) Sec. 1278; Dillon, Municipal Corp. (5th ed.) Sec. 307; note 3 Ann. Cas. 435-437, where most of the cases on the subject are collected; Messmore v. Kracht, 172 Mich. 120, 137 N. W. 549; Clark v. Smith, 250 App. Div. 233, 294 N. Y. S. 106.

The contrary has been held, in cases involving torts or crimes, in Chicago v. Williams, 182 Ill. 135; People v. Skinner, 74 App. Div. 58, 77 N. Y. S. 36; Donahue v. Keeshan, 91 App. Div. 602, 87 N. Y. S. 144; Chapman v. New York, 168 N. Y. 80, 61 N. E. 108; Roofner's Appeal, 81 Pa. Super. Ct. 482; Comm. v. Meany, 8 Pa. Super. Ct. 224; and see note 3 Ann. Cas., supra. Whether the cases may all be harmonized, or the manner thereof, need not be determined, for the rule of the cases first above set out has no application here. They do not hold that the city and a similar organization *must* pay such expenses, but *may* do so in its discretion. Sherman v. Carr, 8 R. I. 431; Cullen v. Carthage, 103 Ind. 196; Messmore v. Kracht, supra. In Sherman v. Carr, supra, one of the leading cases on the subject, the court stated:

"If the officer is thus responsible, he will naturally be too cautious, if not timid, in the exercise of his powers * * * On the other hand, it may be urged, if the officer has the right to fall back upon the treasury of the city, there is danger that he will become reckless and overbearing in the exercise of the powers of his office. It would seem, therefore, to be the wisest to leave the indemnification of the officer in the discretion of those who represent the interests of the city, that, on the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution."

The court added that "we know of no case in which, while the officer continues to act in behalf of the community, *and not in his own behalf,* it is held that the community cannot indemnify him." Importance lies in the words here italicized, even though we should assume good faith in the absence of proof to the contrary. In the case at bar the defendants, sued individ-

ually, were acting in their own behalf when they undertook to engage attorneys to defend the suit brought against them. They were vitally interested in the contract which they made with the attorneys, even if we should concede that the county was interested to some extent. They were naturally prejudiced, and unable to exercise a proper discretion. They were not in possession of that full and complete sense of fidelity to duty required by law from all those who occupy a position of trust. It is a maxim recognized in early common law that no man can be judge in his own cause. Broom's Maxims (9th ed.) 81. It was doubtless taken from the Roman law, as stated in Code Justinian 3, 5, 1. It is a maxim which must at once commend itself to every reasonable man, and which ought not to be disregarded, except when a countervailing public policy by reason of the necessity of the situation exists. It was stated in Edgerton v. Brownlowe, 4 H. L. Cas. 1, 96, 10 Eng. Rep. 359, 598, that "the maxim that 'no man shall be judge in his own cause' is founded on the palpable inconsistency between the situations of a party and judge, which must prevent the decisions of anyone uniting both characters from being satisfactory, even though they should be perfectly just." There can be no doubt that here the individual defendants in the suit became judges in their own case, and that for the purpose of protecting themselves against a charge of having extorted money from the county for their individual benefit. It is perfectly apparent that the court must apply the maxim in such a situation. It is true that they are in a less favorable position than officials whose expenses, according to the cases above cited, may be paid by the city or similar organization. But that is a penalty, if a penalty it is, the risk of which they assume when they take office. In such case at least the statement applies which was made in Roofner's Appeal, supra, that "when one accepts a public

office, he assumes the risk of defending himself even against unfounded accusations at his own expense." Similar to, or identical with, the maxim just stated is the rule that no public official should be interested in a contract entered into by him. In such case he must exercise a discretion as to whether it is for the benefit of the principal for whom or for which he acts. Interest in such a contract is prohibited by section 95-101, Rev. St. 1931, which provides that "it shall be unlawful for any person, now or hereafter holding any office * * * to become in any manner interested, either directly or indirectly, in his own name or in the name of any other person or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called on to vote." That section is now embodied in a chapter entitled "Public Works." But it was not so limited when the statute was enacted in 1891 (Session Laws '90-'91, c. 25), with a title reading: "An act to prevent fraudulent and corrupt practice in the making of contracts by public officers." The reason for the rule is well stated by Dillon, supra, Sec. 772, as follows:

"It is a well-established and salutary doctrine that he who is intrusted with the business of others cannot be allowed to make such business an object *of pecuniary profit* to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principles of reason, of morality, and of public policy. It has its foundations in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails. The law will in no case permit persons who have undertaken a fiduciary character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others. The application of the rule may in some instances appear to bear hard upon individuals who have committed no moral wrong; but it is essen-

tial to the keeping of all parties filling a fiduciary character to their duty, to preserve the rule in its integrity, and to apply it to every case which justly falls within its principle."

While the rule ordinarily applies to pecuniary profit, it has been held that that is not necessarily true. Dillon, supra, Sec. 773, and note. Moreover, the interest which the commissioners, as individuals, had in the contract may well be considered a pecuniary one, for they sought to protect themselves thereby in having received certain compensation from the county.

A case very closely in point herein is Smith v. Nashville, 72 Tenn. (4 Lea) 69. A taxpayer's suit had been brought against the Mayor and Common Council, as well as against the members individually. The petition had charged the officers with malfeasance in office and having brought the city to bankruptcy. It had been sought to enjoin the officials from issuing, receiving, using or speculating in city bonds, which were alleged to have been fraudulently executed. The mayor employed attorneys to defend the suit, and the contract made by him was ratified by the council. The attorney defending the suit then brought an action to recover for his professional services. The court, denying the right to recovery, and holding the action essentially one against the individuals only, stated in part that the sole object of the tax-payer's suit "was to restrain the alleged illegal and fraudulent disposition of the corporate funds by the individual defendants. If the officers of a municipal corporation depart from their sphere of duty, and assume to themselves a power over the corporate property which the law does not confer, and a fortiori, if they are fraudulently appropriating the corporate funds to their own benefit, the court of chancery no longer looks upon them as acting under the authority of their office, but treats them merely as persons wrongfully dealing with property entrusted to

them, and interferes by injunction and other process."

We think, accordingly, that we cannot escape the conclusion that the suit here considered was essentially a suit only against the individuals who composed the board of county commissioners. The board, accordingly, had no authority to engage attorneys to defend the suit at the expense of the county. Part of the contract, then, with the board was void; part of the consideration was illegal. It does not follow, however, that the whole transaction should be held void, if it is possible to separate the illegal from the legal (13 C. J. 512), which we think may be done in this case. The amount stated in the certificates of indebtedness involved herein cannot, of course, under the circumstances, be considered as showing, prima facie, the amount to which the attorneys are entitled, nor can it be presumed, we think, that in as much as four suits were involved, the consideration for each of the suits was the same. Apparently the only method by which the legal may be separated from the illegal, is by plaintiff showing the value of the services rendered in the cases for which the board was authorized to engage attorneys. The judgment of the trial court is, accordingly, reversed, so that this showing may be made, and the cause is remanded to the trial court for that purpose.

*Reversed and remanded.*

RINER, Ch. J., and KIMBALL, J., concur.