Gerald E. SCHMIDT and Lewis K. Foster, Appellants (Defendants below),

v.

Paul FOSTER, Appellee (Plaintiff below).

No. 3117.

Supreme Court of Wyoming.

April 8, 1963.

Goppert & Fitzstephens and J. D. Fitzstephens, Cody, for appellants.

Jones & Fillerup and Henry T. Jones, Cody, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Paul Foster sued his nephew, Lewis K. Foster, and Gerald E. Schmidt, claiming, in the first cause of action, $11,627.08 for work and labor performed and materials furnished in the constructing of a building to be used as an apartment house and, in the second cause, $5,000 by reason of defendants' breach of an agreement that he have a life tenancy in a portion of the premises. The court gave plaintiff judgment against defendants for $4,000 on the second cause of action,[1] and defendants have appealed.

The facts are not seriously in dispute. Defendants' version is as follows: Plaintiff was about to lose, through foreclosure, his apartment house which was still under construction. He talked to his nephew Lewis about redeeming the apartment house from the sheriff's sale, and the nephew in turn talked to Schmidt, his attorney. The two decided to redeem it and borrowed the necessary funds, paying $17,500 to the judgment creditor on the last day of the redemption period, February 23, 1959, having immediately previous thereto obtained a deed from plaintiff for one dollar. After the redemption, they went to the apartment house, talked to the plaintiff, and made a certain agreement with him about which further mention will be made later. Thereafter plaintiff continued to live on the property with a Mr. Illif and to work on the building. He was supposed to collect the rents and send them to Schmidt. In August of 1959 plaintiff kept at least a part of the rent, some of which was used to pay for materials. There was a fire in the house on April 7, 1960, caused by plaintiff's use of a blow-torch. The Schmidts moved into the house the last of April 1960. Plaintiff moved out on May 15, 1960, but left Mr. Illif there until August 11 and did not remove some of his property. In early August plaintiff filed a lien against the house for labor, claiming some $12,000. On September 2, Lewis K. Foster wrote plaintiff to take his property out and later in September defendants notified him that they would move the personal property out of the house and did so.

Plaintiff agrees with defendants' statement of facts except for the following: Plaintiff and Illif were living in the quarters in February 1959 and continued to occupy them until September 16, 1960, when plaintiff was locked out by the defendants.

As to the alleged agreement on which the second cause of action was brought, and which is assumed by both defendants and plaintiff to be the basis of any liability, the parties went to Simonton, an attorney, who drafted the instrument. It read:

"AGREEMENT

"FOR VALUABLE CONSIDERATION RECEIVED, the undersigned owners, Lewis K. Foster, and Gerald E. Schmidt, promise to prove [conceded by the parties to have meant "provide"] Paul Foster with living quarters in the apartment house located on the N½ of Lots 23 and 24 in Block 15, City of Cody, Park County, Wyoming, for the rest of his life. If the owners fail or refuse to keep this contract, Paul Foster's recourse will be to a suit against said Lewis K. Foster and Gerald E. Schmidt for money damages. This contract will not be construed as giving Paul Foster any recourse against the real estate described above, and in no way will effect [sic] the title to the said real estate.

"Paul Foster agrees to serve as manager of the apartment house as long as he is able and his services in that capac-

---

1. Plaintiff was awarded $1,000 on the first cause but this was later remitted upon order of the court.

ity are desired, subject to reasonable vacations and absences.

"Reimbursement for extra work performed by Paul Foster for the owners will be by separate agreement.

"DATED this 23rd day of February, 1959."

Notwithstanding defendants' arguing that plaintiff agreed to finish the apartment house in exchange for the right to live there, in discussing the written agreement they insist that the only consideration for the life estate was plaintiff's promise to serve as manager. By so doing they in effect say that the instrument is a bilateral contract based on mutual promises. If the matter be so considered, the absence of legal obligation on either party becomes immediately apparent. Plaintiff was to serve only as long as he was *able* and so long as his services in that capacity were *desired,* so that the relationship was terminable by either party at any time and without cause. Should this reasoning be applied literally the agreement would have been of no force from the beginning, for it is elementary that as said in Massion v. Mt. Sinai Congregation, 40 Wyo. 297, 276 P. 930, a promise is a good consideration for a promise provided always that it imposes some legal liability on the person making it. If it imposes none, then it cannot be a consideration.[2] Such, however, is not defendants' position. Their argument does not include any contention that the agreement was invalid from the first but rather they say that it existed and was breached because after plaintiff became manager he (1) retained rents for his personal use without any accounting therefor; (2) deliberately violated express instructions and incurred unauthorized indebtedness; (3) made exorbitant and unfounded labor demands, filing a lien against the title to the property in an attempt to enforce such demands; (4) collected rent from the welfare department for Mr. Illif, failing to account therefor; and (5) created a nuisance by allowing the premises to become filthy. Although some of these matters under a conceivable interpretation of the agreement might have constituted a reason for declaring a breach by plaintiff, defendants have presented no cogent reasons or authorities showing that the life tenancy was thus automatically terminated.

Additionally, defendants' August 25, 1960, notice claiming an innkeeper's lien on plaintiff's personal property for $1,080; Lewis K. Foster's September 2 notice demanding vacation of the premises without stating a reason therefor; and defendants' joint notice of September 16, advising that plaintiff's personal property had been stored with a transfer company, would hardly seem to be consistent with or revealing of the position which defendants are now taking.

It may well have been the view of the trial court that under the circumstances disclosed by the record the second and third paragraphs of the agreement were subsidiary to the first and main provision. Such a view would have warranted the application of the rule that where several promises are based on several considerations the fact that one or more of the considerations are illegal will not avoid all of the promises if those which are made on legal considerations are severable from the others. Board of Com'rs of Natrona County v. Casper Nat. Bank, 56 Wyo. 132, 105 P. 2d 578, 585, 130 A.L.R. 727; 17 C.J.S. Contracts § 289 c. Although the consideration for the portion of the contract dealing with managerial duties was not illegal in the sense that it was mala in se or mala prohibita, it was illegal in the sense that it was void and of no effect. See 6A Corbin on Contracts, § 1527 (1962).

The trial court found generally for plaintiff and against the defendants, and this constituted a finding of every special thing necessary to sustain the judgment. Porter v. Wilson, Wyo., 357 P.2d 309, 316; Holbrook v. Continental Oil Company, 73 Wyo. 321, 278 P.2d 798, 803.

Judgment affirmed.

2. For a discussion of this matter, see 1 Williston, Contracts, § 104 (3 ed.).