UNITED STATES ex rel. MORTON v. KING, County Treasurer.

(Circuit Court, E. D. Missouri, N. D. May 25, 1896.)

1. JUDGMENTS—MERGER OF CAUSE OF ACTION—EFFECT ON SPECIAL REMEDY.

The county of K., Mo., was authorized to issue bonds to pay for a subscription to the stock of a railroad company, and to levy a special tax annually in order to raise a fund to pay such bonds. The bonds were issued, and one M. subsequently recovered a judgment upon a part of them against the county. A warrant drawn on the special fund was issued to M. by the county court for the amount of such judgment, and, payment being refused for want of sufficient funds, the warrant was certified, pursuant to the statutes of Missouri, and M. thereupon became entitled to the first moneys accruing from the special tax. Funds having accumulated, M. again made a demand for payment of his warrant, which was refused, and he thereupon brought an action upon the warrant in a federal court, and recovered a general judgment against the county. An order was then made by the county court requiring the county treasurer to pay to M. the moneys then in the special fund, and all moneys accruing to it until he was fully paid. The treasurer paid to M. a part of the amount of his judgment, but afterwards, though having money in hand, refused to pay more, whereupon M. applied to the federal court for a writ of mandamus to compel such payment. The treasurer's return, in addition to these facts, showed that he had been enjoined from making the payment by a state court, at the suit of holders of certain warrants drawn against the special fund after the certification of M.'s warrant. *Held* that, although the warrant issued to M. was merged in the judgment recovered thereon in the federal court, the special remedy incidental to the debt was not thereby lost, and M. was still entitled to be paid out of the first moneys accruing to the special fund.

2. MUNICIPAL CORPORATIONS—PAYMENT OF DEBTS—REQUIREMENT OF WARRANT.

*Held*, further, that the treasurer was not entitled to refuse payment of the judgment, because required by statute to make payments only on warrants of the county court, since either the order of the federal court predicated upon a judgment rendered by it, or the order of the county court requiring him to pay, was a sufficient warrant.

3. MANDAMUS—EXISTENCE OF OTHER REMEDY.

*Held*, further, that the fact that M. might resort to a mandamus, requiring the levy of a general tax to pay his general judgment against the county, assuming such right to exist, was no reason for refusing the mandamus to which he was entitled, and for which he had chosen to apply.

4. STATE AND FEDERAL COURTS—JURISDICTION.

*Held*, further, that, the mandamus sought being the appropriate process for the enforcement of the judgment rendered by the federal court in an action in which its jurisdiction attached before the commencement of the action in the state court, the injunction issued by the latter could not interfere with the execution of such process.

Frank L. Schofield and W. C. Hollister, for relator.

L. F. Cottey, Gardiner Lathrop, and Geo. A. Mahan, for respondent.

ADAMS, District Judge. The facts of this case, as disclosed by the return to the alternative writ and admissions of counsel taken as proof, are as follows: By act of the general assembly of Missouri, approved February 20, 1865 (Sess. Acts, 1864, p. 86), Knox county, with other counties, was authorized to subscribe for capital stock of the Missouri & Mississippi Railroad Company, to issue its bonds therefor, and to levy a special tax, annually, not to exceed $1/20$ of 1 per cent. upon the assessed value of its taxable property, for the

purpose of raising the fund to pay said bonds. This fund will hereafter, for convenience sake, be referred to as the "Special Fund." Pursuant to such authority, the county duly subscribed for stock and issued its bonds therefor. The relator became the owner of some of these bonds, with coupons thereto attached, and in the year 1878, in a suit instituted by him in the circuit court of Knox county, was awarded a judgment thereon. Afterwards, on August 9, 1879, the county court of said county issued to relator a warrant, drawn on said special fund, for the amount of his judgment. On August 12, 1879, this warrant was presented to the county treasurer for payment, and payment thereof was refused for want of funds. Thereupon said warrant was duly certified as required by sections 3166, 3193, Rev. St. Mo. 1889, and the relator, as the holder of such certified warrant, became entitled, subject to the payment of a certain warrant owned by one Van Sycle, which has since been paid, to the first moneys which might thereafter arise from the collection of said annual tax of $1/20$ of 1 per cent. On October 9, 1894, a considerable amount of money had accumulated in the special fund as a result of the several preceding annual levies of $1/20$ of 1 per cent., and the relator again demanded of the treasurer the payment thereof to him on account of his certified warrant. This was refused, on the alleged ground that the statute of limitations had barred relator's right. The refusal involved a denial of any and all obligations to the relator by reason of his warrant. The relator thereupon instituted suit in this court against Knox county upon his warrant, alleging, in his petition, the facts aforesaid, which entitled him to precedence of all others as against said special fund, and prayed for a general judgment against the county. In due course his suit came on for hearing, and on December 7, 1894, a judgment was rendered in this court, in favor of the relator, and against Knox county, for the sum of $8,627.40. The court, in entering up the judgment, first recited the facts above mentioned, entitling the relator to precedence as against the special fund, and entered a general judgment for the above-mentioned sum against the county. Afterwards demand was made upon Knox county and its treasurer, by this relator, for the payment of any moneys standing to the credit of the special fund to him, on his said judgment. The county court afterwards, at its August term, 1895, made and entered of record an order in words and figures as follows:

"It is this day ordered by the court that the balance of the M. & M. fund in the treasury be paid to W. C. Hollister, attorney for W. H. Morton, to be applied as part payment of the judgment obtained by said Morton in the United States court at Hannibal, Missouri, on the 7th day of December, 1894, to be paid by treasurer out of said fund, and the said fund to be hereafter applied, as fast as accumulated in the sum of $100 or any multiple thereof, to the payment of balance of said judgment."

On August 6, 1895, a duly-certified copy of the above-mentioned order of the county court was served on the respondent herein, as treasurer of Knox county, and on said last-mentioned day the treasurer paid to the relator, on account of his said judgment and warrant, $1,480.06, and afterwards paid the further sum of $26.04, and, although there remained in his hands, at the time the information in

this case was filed, the further sum of $1,160, belonging to the special fund, the treasurer, prior to the institution of this suit, refused to make further payment thereof to the relator. Thereupon the relator applied and secured the alternative writ in this case.

The return of the respondent to the alternative writ shows the foregoing facts, and further shows that there are other unpaid warrants, issued by Knox county against the special fund, amounting in the aggregate to about $10,000, and that these warrants were presented to and certified by the treasurer for payment under the provisions of sections 3166, 3193, supra, after August 12, 1879, the date relator's warrant was presented and certified. The return further shows that, prior to the filing of the information in this case, the holders and owners of the last-mentioned warrants sued out of the circuit court of Knox county a writ of injunction, which was duly served upon respondent in this cause, enjoining and restraining him from making any further payments to the relator out of the special fund until all of said other warrants should be fully paid, and that said suit is now pending. The return further shows that Knox county caused to be levied and collected for the general purposes of the county, only 40 cents on the $100 valuation of taxable property for each of the years 1879, 1881, 1884, 1885; that there is therefore left the liability of the county, under the laws of the state of Missouri, to make a further levy of 10 cents on each $100 in valuation for each of said years, aggregating 40 cents on the $100 of taxable valuation, to which, it is alleged, the relator can resort in order to secure the payment of his judgment.

It is claimed, by the respondent: (1) That the judgment rendered in this court on December 7, 1894, founded on relator's warrant of 1879, merged all liability on the warrant, and destroyed the incident of precedence in right against the special fund attached to the warrant itself. (2) That, because the statute of Missouri requires county treasurers to pay out money only on warrants drawn by the county court, and because the relator's warrant was merged in the judgment aforesaid, therefore, inasmuch as there is no warrant upon which the treasurer can pay money, there can be no payment, and certainly no mandatory order upon the treasurer of the county to make any payment upon the judgment in question. (3) That the relator has another adequate remedy for the enforcement of his judgment, namely, a proceeding by mandamus against the respondent to compel it to levy a general tax, not exceeding 40 cents on the $100 in value of taxable property, because, as already seen, the county did not require for general purposes, and did not exhaust, the full limit of taxation for the years 1879, 1881, 1884, 1885; the balance unrequired and unlevied for such years being a resource, open to relator, to satisfy his general judgment against the county. (4) That by reason of the injunction sued out of the circuit court of Knox county, restraining the respondent from paying money out of the special fund to the relator, he cannot obey the mandate of this court to do so.

I will premise my views on these several propositions by saying that it is unnecessary to pass upon the question, argued at length

by counsel, whether the findings of fact, already alluded to, found in the record of the judgment of this court in the case of Morton v. Knox County on the warrant in question, are conclusive or not. The return and admissions of the parties in this proceeding sufficiently establish the truth of the matters and things so found by the court. For the purposes of this case, therefore, the warrant must be treated as having been originally issued upon a judgment founded on bonds and coupons issued by Knox county in aid of the construction of the Missouri & Mississippi Railroad. This warrant, having been so presented to and certified by the county treasurer as to constitute it, now, first in right against the special fund, is entitled to whatever there may be in the special fund unless some one of the foregoing propositions asserted by the respondent in his return is held good. I will consider them in the order stated.

1. The first question is whether this right is destroyed by the relator's action in securing the judgment of this court on December 7, 1894, upon his warrant. It is claimed by the respondent that this judgment so merged the warrant as to destroy the relator's priority in right against the special fund. I think this claim is founded on a misconception of the doctrines of merger, as applicable to judgments. It is true that the judgment merged the liability of the county, so that, technically speaking, it now rests in specialty; that is to say, on the judgment, whereas, before it rested on the promise found in the warrant. The doctrine of merger, as applicable to this case, relates to the obligation or debt itself, and does not affect the remedial incident with which the law has clothed the debt. By the law of this state, the relator, as the holder of the warrant in question, was given a specific and valuable right, incidental to the debt, and in the form of a remedy for its enforcement. I do not think this remedy is gone simply because the debt itself has risen from what is called a "simple contract obligation" to the dignity of a specialty. It has been held that whenever justice requires it, a judgment will be adjudged to be an old debt in a new form, and will not be regarded as creating a new debt. Black, Judgm. § 677, and cases cited. The doctrine of merger by judgment, like most rules of the common law, is flexible in its character, intended to accomplish justice, and, as a general rule, it is not favored, in either law or equity, except so far as it served to execute the intention of the parties. James v. Morey, 2 Cow. 246. In the light of these principles, how does the case stand? The relator was the owner of a warrant of Knox county, so certified by the treasurer as, under the law of the state, to entitle him to the special fund in question. He duly presented this warrant for payment, and payment was refused. The courts of the land were his only recourse. Being a nonresident of the state, he availed himself of his legal right to pursue his remedy in this federal court, and, after issue joined, recovered a judgment against the county. In other words, the defense of the county was not sustained. By the settled law of this court, the relator could not avail himself of his sole remedy by mandamus to enforce the payment of his debt, until he had reduced it to a judgment. Shall the fact that Knox county refused to pay relator's

warrant, or to appropriate the fund specially created for that purpose to such payment, and thus compelled him to resort to the courts to establish his demand, in and of itself, be the weapon which destroys the valuable remedy inhering in the original debt? If such is the law, it is easy for the defendant, by declining to pay its warrants, without any fault of the warrant holder, to practically repudiate its obligations by placing the fund especially appropriated by law for their payment beyond the reach of its creditors.    Common sense and common honesty rebel against such interpretation of the law as will produce such results.    The judgment on the warrant involved in this case ought, therefore, to carry with it the remedy inherent in the warrant itself, and, in my opinion, this dictate of common honesty is supported by abundant authority.    It is said in the case of Ralls County Court v. U. S., 105 U. S. 733, wherein bonds and coupons like those originally held by the relator in this case are considered, as follows:

"While the coupons are merged in the judgment, they carry with them into the judgment all the remedies which in law formed a part of their contract obligations, and these remedies may still be enforced in all appropriate ways, notwithstanding the change in the form of the debt."

This construction of the law is stated and approved in Harshman v. Knox Co., 122 U. S. 319, 7 Sup. Ct. 1171, involving the construction of the very bonds which are the basis of relator's warrant and judgment in this case.    To the same general effect are the following cases:   Tabor v. The Cerro Gordo, 54 Fed. 391; Hay v. Railroad Co., 20 Fed. 15.    In the last-mentioned case the district judge delivers the opinion, and Chief Justice Waite, who sat with him, concurs therein.    It is there said:

"It is a very strange pretension that the pursuits of the very remedies given by the state to keep alive judgments and their liens, merges and extinguishes them.   *   *   *   And the court is unwilling to hold, in view of this statutory requirement, that the plaintiff in those suits, by complying with those requirements, lost the very rights which he was seeking to perpetuate.   Whatever may be the general doctrine in other jurisdictions as to the merger of one judgment into another, it cannot be so applied in Virginia as to convert the statutory provisions that have been alluded to into a delusion and a snare."

This quotation seems especially applicable to the present case. Many other authorities which the industry of counsel has collected might be referred to here, but they seem unnecessary.    The foregoing cases are decisive of the question of merger raised in this case, and I accordingly hold that, notwithstanding relator's warrant was reduced to judgment in the way and manner and for the purpose already stated, he still has a preferential right against the special fund in question for the satisfaction of such judgment.

2. Again, it is urged by respondent that he cannot pay the fund in question to the relator because the law of Missouri (section 3165, Rev. St. 1889) requires that he shall "disburse moneys on warrants drawn by order of the county court," and then only by the treasurer's check drawn on the depositary selected for keeping the funds of the county.    It is argued that, because the writ of mandamus can only be employed for the purpose of compelling the respondent to do that which he is authorized by law to do, therefore, inasmuch as

the relator's warrant has become merged in his judgment, he has no longer any warrant to present to the treasurer, and that the treasurer, for want of a warrant, cannot, under the law, draw his check on the depositary for the payment of relator's judgment. This argument, analyzed, amounts to the assertion of a right on the part of Knox county to escape liability by the mere refusal to do its duty. According to it, the county can refuse to pay a warrant, compel the holder to resort to the courts to establish his demand by a judgment, and then, forsooth, because the warrant is merged in the judgment, the relator has no warrant to present, and therefore the treasurer cannot pay. This, in my opinion, is "reductio ad absurdum." The order of this court, predicated on a judgment rendered by it, is sufficient warrant for the treasurer. Mr. Justice Brewer, ruling on a similar question pending in the circuit court of the Western district of this state (see case No. 107 of this court for a copy of the opinion), pronounces such a claim of immunity as absurd, and I fully agree with him. 75 Fed. 259. If, for any technical reasons, the treasurer needs a warrant issued by the county court as a prerequisite for paying the money in controversy, the case before the court shows that his requirement has been fully met by the order of the county court made in this case. After the judgment was rendered in this court on December 7, 1894, in favor of the relator, it appears, as already seen, that the county court of Knox county made an order directing the treasurer, this respondent, to pay the money in question to the relator. The reason, therefore, assigned by the respondent in his return for not paying the money to the relator, because he could not do so in conformity with the laws of the state of Missouri on the subject, is without merit.

3. It is next contended by the respondent that the relator has another and adequate remedy for the enforcement of the payment of his judgment in a resort to a proceeding by mandamus to compel Knox county to levy a general tax of 40 cents on the $100 in valuation of taxable property to make up the deficiency in the levies for the years 1879, 1881, 1884, 1885, and that therefore this proceeding cannot be maintained. If I correctly understand the decisions of the supreme court in the cases of U. S. v. Clark Co., 96 U. S. 211, Knox County Court v. U. S., 109 U. S. 229, 3 Sup. Ct. 131, and Macon Co. v. Huidekoper, 134 U. S. 332, 10 Sup. Ct. 491, the relator cannot resort to this suggested remedy until he exhausts the special fund of $1/20$ of 1 per cent. But it is suggested that the relator may abandon any claim to this special fund, apply the doctrine of merger contended for by respondent, stand as a general creditor of Knox county, and resort to the remedy suggested, and secure full payment. This he might possibly do if he saw fit. But it is for him to determine, and not for the court to command. The legal argument on this proposition is that mandamus will not lie in this case because the relator has another adequate remedy. But the supposed adequate remedy suggested is itself by mandamus. This, obviously, is not the kind of remedy contemplated by the rule invoked. As a complete answer, however, to this third ground of objection made by the respondent, it is sufficient to say, the relator has, according

to repeated adjudications of the supreme court, a recognized legal right to the present proceeding by mandamus in execution of his judgment; and he cannot be deprived of his right by the mere suggestion that some recourse of the kind suggested is also open to him.

4. The next and last reason assigned by the respondent for not obeying the alternative writ issued in this case is that the circuit court of Knox county, by its injunctive order, made August 10, 1895, in a case in which the other warrant holders of Knox county, heretofore referred to, are plaintiffs, and this respondent is defendant, enjoined and restrained him from paying relator's judgment, and that he cannot do so without incurring the penalties of contempt of the state court. The writ of mandamus issued in this case to enforce the payment of a judgment of this court is the only process by which this court can enforce the payment of its judgment in such cases. It is ancillary to the judgment, and serves the purpose usually served by the ordinary writ of execution. The power conferred upon this court to render the judgment includes the power to enforce its judgment by the appropriate process. The jurisdiction of this court, therefore, having first attached by the institution of relator's suit, and by the rendition of judgment thereon, it must proceed to exhaust its jurisdiction by enforcing compliance with its judgment, and no state court can interfere, by injunctive orders or otherwise, to prevent it. Riggs v. Johnson Co., 6 Wall. 166. To enjoin the payment of relator's judgment is, in effect, to enjoin the execution of the process of this court. It cannot be done.

For the foregoing reasons, the motion to quash the return of the respondent must be sustained.