This is an action by plaintiff, Petters and Company, against the Town of Rock River, Wyoming, to recover upon two city warrants, each dated September 21, 1922, for the sums of $5,000 and $5,059.23 respectively, each made payable to the First National Bank of Rock River, Wyoming.
A short time thereafter, these warrants were fully endorsed by the First National Bank and sold to the plaintiff for $9,707.16. The petition of the plaintiff alleges ownership of the warrants, and presentment for payment and refusal on the part of the town to pay the same. The answer of the town alleges the warrants were unlawfully issued and fraudulently obtained from the town by the bank, and that the town never received any consideration for the same, etc.
The reply pleads an estoppel, and asserts, among other things, that the town is estopped to deny: First, the validity of the warrants; second, want of consideration for the same; andthird, estopped to deny the acts of its officers from issuing the warrants, and also alleges that the town is estopped to plead and allege fraud in the obtaining of the warrants.
It is admitted that the plaintiff is the owner of the warrants, and paid a valuable consideration for the same, and that they have not been paid.
The trial consumed several days in time and a great deal of testimony was taken in the case. During the first trial, one of the jurors died, thus making it necessary that the *Page 228 
case be re-tried. And on the second trial, the jury returned a general verdict in favor of the defendant, and judgment was accordingly entered by the court in favor of the defendant.
The findings by the jury and the evidence introduced in the trial, clearly indicate to us the following facts and circumstances to have existed, to-wit:
That the Town of Rock River was a municipal corporation that was continuously in need of money; that its city council was dominated by a man named L.C. Butler, who was not only mayor of the town, but was vice president and cashier of the First National Bank of Rock River — the payee of the warrants sued upon in this case; that no books or records of any consequence were kept by the town of its council meetings, and those that were kept were of a very meager description and the minutes very indefinite; that the bank was in the habit and did buy the town warrants continuously, and, at a regular meeting of the town council on September 8, 1922, Butler represented to the council that the First National Bank — of which he was vice president and cashier — was holding some old city warrants known as numbers 77, 78, 79 and 80, totalling $10,059.23; that these warrants were getting old and that the board of directors of the bank wanted them renewed and desired that the council renew the old warrants by issuing two new warrants, one for $5,000 and one for $5,059.23, to take up the old warrants numbering 77, 78, 79 and 80.
The council, pursuant to Butler's request, authorized the clerk to issue two new warrants — Nos. 127 and 128 sued upon in this case — one to be for $5,000 and one for $5,059.23. The council also at that meeting instructed the city clerk to hold these two new warrants, and not to deliver them to the bank until the bank turned over to the clerk the four old warrants above mentioned. *Page 229 
The clerk, a short time after this council meeting, went to the bank to see Butler, and took with him these two new warrants, Nos. 127 and 128 for $10,059.23, and, instead of Butler giving him the four old warrants that he had represented the bank held and would exchange for the new warrants, he gave to Nelson, the clerk, the following receipt:

 "THE FIRST NATIONAL BANK
 Rock River, Wyo.
 Sept. 21, 1922.
 Received this date from the Town of Rock River, the following
warrants:
 #127 First Nat'l Bank 9-21-22 $5,059.23
 #128 do 9-21-22 5,000.00
which are to take the place of the following warrants which we are now
holding:
 #77 10- 8-21 First Nat'l Bank $3,739.23
 #78 10- 8-21 do 2,760.00
 #80 10-26-21 J.S. Schwartz 1,560.00
 2,000.00
 THE FIRST NATIONAL BANK, ROCK RIVER,
 By Lewis C. Butler,
 Cashier."

The bank did not have the four old warrants but had sold them long before to other banks and bond houses. Wilcox and Son of Denver had purchased from the bank and was then holding warrants Nos. 77, 78 and 80, and the American National Bank of Cheyenne had purchased and was then holding warrant No. 79, for $2,000.
The First National Bank did not deliver the four warrants to the town. The bank, through Butler, then attempted to sell the two new warrants, Nos. 127 and 128, to the plaintiff herein, and finally made the sale to the plaintiff by furnishing the plaintiff a certificate of the city treasurer as to their validity, and a contract of repurchase on the part of the bank. The bank received from the plaintiff in the neighborhood of $10,000 for these two warrants and never paid the money to the town and never *Page 230 
delivered the four old warrants to the town, as it represented that it would do.
The other members of the city council never knew that the warrants Nos. 127 and 128 had been sold by the bank to the plaintiff, and never knew that the bank did not deliver the old warrants to the clerk, as provided and specified at its council meeting of September 8, 1922, until after the bank's failure. Later on the bank, through Butler, prevailed upon the city council to float a bond issue for the purpose of taking up some of the indebtedness and to buy a water system. At about this time, Wilcox and Son, who held warrants Nos. 77, 78 and 80, insisted upon the bank taking these warrants back from them, under their original repurchase-contract with the bank, which the bank did. The American National Bank of Cheyenne held warrant No. 79 for $2,000. In order to sell warrants Nos. 77, 78 and 80 again, and the First National Bank being in hard circumstances, Butler prevailed upon the International Trust Company of Denver to send an agent to Rock River to buy the bonds that the city was issuing, and after the agent arrived on March 14, 1923, and after the agent had contracted with the city for the bonds, Butler, before he would allow the International Trust Company to buy the bonds, insisted that the International Trust Company buy from the bank warrants Nos. 77, 78 and 80, and authorized the International Trust Company to deduct from the bond issue, when the money was forthcoming, the amount of these three warrants which they were then buying from the bank.
It further appears that Petters and Company knew nothing about the representations of Butler to the city council, and the International Trust Company knew nothing about the dealings of the First National Bank, and Butler and the council. The International Trust Company deducted the amount of the three warrants from the bond issue and returned the warrants to the town the following *Page 231 
fall, along with the balance due on the bonds. The city then paid the American National Bank for warrant No. 79.
It will thus be seen that Butler, by this manipulation, arranged for three warrants — Nos. 77, 78 and 80, — to be returned to the town by having their amount deducted from the bond issue by the Trust Company; and thus it will be seen that the First National Bank of Rock River was getting paid for three of the old warrants from the Trust Company and for warrant No. 79 from the American National Bank, and was also paid for the two new warrants from Petters and Company. Then in April, 1923, the bank failed, and the town woke up, "poorer but wiser," and started an investigation by appointing an auditing committee. This committee soon found that a "J. Rufus Wallingford" had been operating in their midst.
Charges were preferred against Butler and he was tried and convicted in the Federal Court for misappropriation of funds, and sentenced to the penitentiary.
Butler appeared and testified in behalf of the plaintiff but the jury, after hearing the other witnesses, apparently did not take much stock in his testimony.
Thompson, the city treasurer, was in the court room and each side declined to call him on the stand. Nelson, the clerk, did not testify.
From what has been said, we have the following questions of law to decide:
When an innocent purchaser for value, of city or town warrants, sues thereon to recover from the town, can the town successfully set up as a defense:
First — Fraud on the part of the original payee in securing said warrants from the town?
Second — The want of consideration passing from the original payee to the city?
Third — The illegality of the warrants? *Page 232 
To each and all of these questions we must answer in the affirmative, and in thus answering these questions, we say further that the city is not estopped from pleading the defenses above mentioned.
In 2 Dillon on Municipal Corporations, page 1295, it is said:
"The question whether there is any implied power in the officers of a town, county, or city corporation to issue warrants or orders which shall be free from equities in the hands of holders has been disposed of by a long line of decisions which denies to those warrants or orders the principal attribute of negotiability, viz., freedom in the hands of bona fide
transferees from equities in favor of the municipality. This result is arrived at as much by reason of the purpose or object intended to be attained by these instruments as by a consideration of the lack of power, inherent or implied, on the part of municipalities to make and issue negotiable instruments without clear statutory authority therefor. Such warrants or orders, drawn for ordinary municipal expenses, are not intendedto have the qualities of commercial paper, but are instruments authorized for convenient use in conducting the current and ordinary business of the corporation and as a means of anticipating its ordinary revenue. It would overwhelm municipalities with ruin to hold that such warrants or orders have the qualities of negotiable paper, especially that quality which protects an innocent holder for value from defences of which he has no notice, actual or constructive. All holders of such warrants or orders, even when payable to order or bearer, stand in the shoes of the payee, and their rights and remedies are often essentially different from those of the holder of authorized negotiable municipal bonds. Such is the sound doctrine, and such is the doctrine of the authorities without exception."
A county, city or town warrant is a non-negotiable paper, and the very fact of its being non-negotiable is a sign of warning to a prospective purchaser, and places him on his guard; hence, they are not within the protection of the rule which guards commercial paper. The *Page 233 
holder must take it subject to the risk that it has been lawfully and properly issued and for a consideration; the fact of the paper itself is notice to him that its validity depends upon the regularity of its issue and delivery. The word "warrant" does not mean bond or note, and thus claim the protection of the negotiable instrument law. In 2 Dillon on Municipal Corporations, sec. 857, it is said:
"A municipal corporation is not estopped, after a warrant upon its treasury has been issued, to set up the defence ofultra vires, or fraud, or want or failure of consideration."
1 Abbott on Municipal Corporations, sec. 235, p. 537; 5 McQuillin on Municipal Corporations, sec. 2249, p. 4761; 2 Dillon on Municipal Corporations, sec. 856, p. 1295; Field v. Park,141 Mich. 69, 104 N.W. 393; American Bridge Co. v. Wheeler, 35 Wn. 40,76 P. 535; Gilman v. Township, 8 N. Dak. 627, 80 N.W. 889; State v. Cook, 61 N.W. 694, 43 Nebr. 318; Bank v. Oklahoma City,32 Okla. 432, 122 P. 644; Jack v. Nat'l Bank of Wichita,17 Okla. 430, 89 P. 219; Vawter v. Gates, 66 Kans. 505,72 P. 207; Trust Co. v. City, 19 Wn. 150, 52 P. 1015; Bardsley v. Sternberg, 17 Wn. 243, 49 P. 499; Bank v. Bartlett, 78 Cal. 301,20 P. 682; School District v. Western Tube Co., 5 Wyo. 185,38 P. 922.
Counsel for the plaintiff argue that the town should be estopped from denying its liability on its warrants when in the hands of an innocent purchaser for value; and cites a number of cases where certificates of stock have been assigned in blank and delivered to a stock broker, who later unlawfully sold them to innocent purchasers for value, and kept the money — the courts holding that the purchaser would be protected in his purchase.
They cite other cases where the stock is assigned in blank and placed in a bank for safe keeping and is stolen by a clerk and sold or hypothecated, and the court held *Page 234 
that the purchaser should be protected, on the ground that where one of two innocent parties must suffer a loss, the one that made the unlawful act first possible should suffer the loss and bear the responsibility.
We believe that principle is not applicable but that the policy of the law, clothing municipalities with the protective rule aforesaid, is of greater importance than the innocent purchaser rule above mentioned and contended for; otherwise a few dishonest officials or even one could bankrupt a town, without the town receiving any benefits from the issuing of its warrants. The decisions involving city, town and county warrants relied on by plaintiff, applying the principle of estoppel, are where the public corporation has received the money or other benefits, of equal or corresponding value. Scott County, Arkansas v. Advance-Rumley Thresher Co., 288 Fed. 739, 36 A.L.R. 937.
In the case of Mayor v. Ray, 19 Wall 468, 22 L.Ed. 164, the court has this to say, in part:
"But to invest such documents with the character and incidents of commercial papers, so as to render them in the hands of bona fide holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company, and puts it into the power of municipal officers to involve political communities in irretrievable bankruptcy. No such power ought to exist, and, in our opinion, no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied."
To give legal sanction to acts such as occurred in this case would encourage crookedness and put a premium on shady deals by city officials.
Warrants under the law were never intended to be used for the purpose of borrowing money, but were intended as an order by one official on another for current expenses. *Page 235 
City bonds are in a different class entirely, and are negotiable instruments. They are not issued until the citizens are advised of the reasons for, and the amount of the issue and given an opportunity to object to the issue. But warrants, because of the nature of their creation, the purposes for which issued, the informal manner of their issue, the danger of mistakes, fraud, want of consideration, etc., are not given the protection of negotiable instruments.
In the case of the Continental Trust Co. v. Butts County,148 Ga. 623, 97 S.E. 679, decided in 1918 by the Supreme Court of Georgia, the facts are nearly identical with this case. There the County Commissioner issued new warrants to take up old warrants, on the representation of one Tuggle that the old warrants would be surrendered. The old warrants were not surrendered and the new warrants were sold by Tuggle to innocent purchasers. In a suit on the new warrants by the innocent purchaser it was held by the court that they had no action against the county, and could not enforce their payment.
It will be found on an examination of the authorities and text books on the questions involved herein that it is held by the great weight thereof, that a city or town may raise any defence either legal or equitable, that it might have, as against the original payee; that an innocent purchaser stands in the shoes of the original payee; and especially is this so when the city does not receive the consideration for the warrants.
This being the law, how can the defendant be estopped from raising the defences of fraud, want of consideration, andillegality of their issue?
In this case the bank represented through Butler, its vice president and cashier, at the council meeting, that it — the bank — had the old warrants and wanted new warrants issued to take care of the old ones and they would be turned over to the city for the new warrants. Butler knew at that time that the bank did not have the old warrants, *Page 236 
and not only that, Butler, for the bank, refused at numerous times to return these old warrants.
Butler admitted on the witness stand that neither he nor the bank ever took up the warrants Nos. 77, 78, 79 and 80 with the proceeds of the sale of warrants Nos. 127 and 128, but claimed that he, for the bank, took up some warrants in the eight hundred series, all of which was denied by the other town officials who testified.
One of the main questions settled by the jury was whether or not there was any consideration passing from the bank to the city for these two new warrants.
The jury were instructed that if they found that the proceeds from the warrants Nos. 127 and 128 were used to take up outstanding obligations of the town, even though not used to take up warrants Nos. 77, 78, 79 and 80, the plaintiff was entitled to recover, but if the town did not receive any valuable consideration for the warrants Nos. 127 and 128, then they should find for the defendant: Thus the jury had the question of consideration or benefits fairly before it and decided upon the facts against the plaintiff.
We find no error in the record, and the judgment of the District Court is accordingly affirmed.
Affirmed.
POTTER, J., and RINER, District Judge, concur. *Page 237