STATE, EX REL., ROBERTSON INV. CO. v.
PATTERSON, FORMER COUNTY TREASURER,
ET AL.

(No. 1820; December 11, 1934; 38 Pac. (2d) 617)

For the plaintiff in error there was a brief by *W. B. Cobb, E. Paul Bacheller, E. E. Enterline,* and *Edward E. Murane,* all of Casper, and oral arguments by *Messrs. Cobb, Bacheller, Enterline* and *Murane.*

418

420

For the defendant in error, there was a brief by *George A. Weedell* and *R. R. Rose,* both of Casper, and oral argument by *R. R. Rose.*

KIMBALL, Chief Justice.

This is an action for mandamus brought on the relation of Robertson Investment Company to compel defendant, county treasurer of Natrona County, to pay relator $7500 evidenced by three county certificates of indebtedness for $2500 each.

The petition alleges the following facts: On June 7, 1928, the Board of County Commissioners of Natrona County, adopted a resolution whereby three attorneys at law were retained and employed to represent Natrona County in certain actions then pending in the district court. On the same day each of the attorneys so employed presented to the board his claim for $2500, the sum required to be paid under the provisions of the resolution of employment. The claims were allowed and certificates of indebtedness issued payable from revenues for 1928. The county treasurer at first refused to register the certificates but on June 9 did so in obedience to peremptory writs of mandamus. The payees on June 9, 1928, for value assigned the certificates to banks, who in March, 1929, assigned them to relator. The defendant refuses to pay the certificates though they have been presented and payment demanded, and the funds on hand arising from the collection of the taxes for the year 1928 are sufficient to pay them.

The resolution of June 7, 1928, mentioned in the petition, is attached as an exhibit. It recites the bringing of four actions in each of which the plaintiff sought "to restrain and enjoin the Board of County Commissioners of said county from auditing, allowing or

approving" certain claims against the county; that the county attorney "declined and refused to defend the county of Natrona, and its interests, in the said actions"; that the board "deemed it necessary and proper to retain and employ said [three] attorneys for the successful defense of said actions and each of them, and to protect the interests of the county"; that it had been agreed that each attorney shall be paid $2500 "as retainer fees, and for and on account of legal services in said actions," and that "such further and additional reasonable compensation be paid to said attorneys respectively, at such time and in such amounts as may be hereafter agreed upon by and between this board and said attorneys."

The answer of the county treasurer, as defendant in the present action, contains admissions of some and denials of other allegations of the petition, and then states in separate paragraphs seven further defenses numbered two to eight. The plaintiff demurred to each of these separate defenses on the ground that it was insufficient in law on its face. The demurrer was sustained except as to the defense numbered seven. The plaintiff refused to plead further, and judgment for defendant was entered. The plaintiff brings the case here by proceeding in error, alleging that the district court erred in overruling the demurrer to the seventh defense.

In the seventh defense it is alleged that by resolution of the board of county commissioners made and adopted by said board on September 7th, 1928, the resolution of June 7th, 1928, if any there was, and the certificates of indebtedness issued thereon, were cancelled and rescinded, and the defendant county treasurer was directed to refuse payment of said certificates. A copy of the resolution of September 7, 1928, is attached as an exhibit. The resolution recites that a

previous resolution "was spread upon the minutes" of the board at a meeting held June 7, 1928, "which purported to employ" the three attorneys to represent Natrona County in certain actions in which the defendants were the board of county commissioners and various officials of the county and other individuals, and that all such actions were "for the purpose of obtaining injunctive relief against the illegal expenditure of funds of Natrona County, and to obtain reimbursement for Natrona County of funds alleged to have been illegally expended." It then recites the auditing and allowing of the three claims of the attorneys "as retainer fees" in said actions, and the issuance of the certificates of indebtedness. It is then declared that:

"This Board finds the employment of the above named attorneys in the cases above described to represent Natrona County was and is unnecessary; that the County Attorney of Natrona County, Wyoming, appeared in said actions and represented Natrona County therein; that it was and is contrary to the interests of Natrona County for Natrona County to make any defense whatever in any of said actions, and that the interests of Natrona County in said actions are identical with those of the plaintiff and adverse to those of all other defendants in said actions; that the above named attorneys represented other defendants in said actions whose interests were and are adverse to those of Natrona County at the same time that said attorneys purported to represent Natrona County; that the fees purported to have been allowed to said attorneys as retainer fees in said cases, considered in the light of the amounts involved in said cases, the number of parties defendant, and the work actually performed, are exorbitant and extortionate; that the employment of said attorneys, if any such employment was in fact ever made, was and is illegal and fraudulent; that the allowance of said claims to said attorneys for alleged services in said actions was and is illegal and fraudulent; that the issuance to said attorneys of said certificates of indebtedness hereinabove described was and is

illegal and fraudulent, and said certificates are illegal and fraudulent."

The resolution then purports to rescind (1) the action of the board with reference to the resolution of June 7, (2) any contract between Natrona County and the attorneys, and (3) the action of the board in allowing the attorneys' claims for fees. It is declared that the three certificates of indebtedness (describing them) are cancelled; the county clerk and county treasurer are "instructed and directed to cancel said certificates upon the records of their respective offices" and "the county treasurer is * * * further instructed and directed to refuse payment of said certificates, or any of them if presented to her for payment." It is further resolved that the attorneys, if ever employed to represent the county, are discharged, and that thereafter the only attorney authorized to represent the county in said actions shall be the county and prosecuting attorney.

The question for decision is whether or not the resolution of September 7 was justification for the treasurer's refusal to pay the certificates of indebtedness in the hands of a purchaser for value.

It is argued that the allowance of the claims had the conclusive effect of a judgment which became final on the delivery of the certificates and could not be impeached in this case except by pleading and proving facts that would authorize a court to restrain the execution of a judgment. That the allowance of a claim by a municipal auditing board has the full effect of a judicial determination by a court finds but little support in the authorities; but many cases hold that the action of the board is final and conclusive as to the facts which it had a right to pass upon, and that it cannot be impeached except for fraud, illegality or, perhaps, mistake. See: Sioux County v. Jameson, 43 Neb. 265, 61 N. W. 596; McFarland v. McCowen, 98

Calif. 329, 33 Pac. 113; American Bridge Co. v. Wheeler, 35 Wash. 40, 76 Pac. 534; Carbon County v. Draper, 84 Mont. 413, 276 Pac. 667. The extreme view is thus stated in McFarland v. McCowen, supra: "When the board of supervisors heard and determined the facts involved in the claim, and made their allowance thereof, it became *res adjudicata,* and, in the absence of fraud, conclusive." The conflict of the authorities on the point is noted in 55 Am. St. Rep. 203. The views of this court are stated in Petters & Co. v. Town of Rock River, 37 Wyo. 225, 260 Pac. 674, an action against the town by an innocent purchaser for value of town warrants. The warrants were held to be mere non-negotiable written promises to pay which, it was said, were subject to all defenses "either legal or equitable that the town may have against the payee." We quoted with approval from Dillon on Municipal Corporations (5th ed.) § 857, the statement that "a municipal corporation is not estopped, after a warrant upon its treasury has been issued, to set up the defense of ultra vires, or fraud, or want or failure of consideration." This case was followed in Petters & Co. v. School District, 37 Wyo. 237, 260 Pac. 678, 263 P. 105, where the purchaser for value of school district warrants was treated as the assignee of a non-negotiable instrument. In view of these decisions we could not consistently hold that the allowance of a claim by the county board is such a final decision as will prevent the county from contesting the claim when sued on the certificates issued in pursuance of such allowance. See, Commissioners v. Keller, 6 Kan. 510 (approved by Judge Dillon in note to § 857, supra) ; People ex rel. Hotchkiss v. Supervisors, 65 N. Y. 222; Board of Supervisors v. Carlett's Ex'rs., 86 Va. 158, 9 S. E. 999; Gurnee v. Brunswick County, 1 Hughes, 270; Clark v. Des Moines, 19 Ia. 199, 211, 87 Am. Dec. 423; Webster County v. Taylor, 19 Ia. 117, 120; Board of Commis-

sioners v. Sherwood, 64 Fed. 103; Abernathy v. Phifer, 84 N. C. 711, and other cases reviewed below.

The board of county commissioners, in auditing claims against the county, is not exercising judicial power. See, State ex rel. Jeffrey v. Burdick, 3 Wyo. 588, 592, 28 Pac. 146; In re McInerney, (Wyo.) 34 P. (2d) 35, 41. But its decisions are not to be denied finality merely because the board does not exercise judicial functions. *Quasi-judicial* action may be final and conclusive if the statutes give it that effect. May v. Penton, 45 Wyo. 82, 88-89, 16 P. (2d) 35. The effect to be given to the decision may depend on the nature of the act and the right acquired by the person who relies on the decision. See Matter of Equitable Trust Co. v. Hamilton, 226 N. Y. 241, 245, 123 N. E. 380; Wilbur v. United States, 281 U. S. 206, 217.

The statutes declare that each county "shall be a body corporate and politic" empowered, among other things, "to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers," and that "the powers of a county as a body politic and corporate shall be exercised by a board of county commissioners." R. S. 1931, §§ 29-301, 29-302. The county may sue and be sued in the name of the board. §§ 29-301, 29-305. The board's specifically enumerated powers include the power at any meeting:

"To make such orders concerning the property belonging to the county as they may deem expedient.

"To examine and settle all accounts of the receipts and expenses of the county, and to examine, settle and allow all accounts chargeable against the county, and, when so settled and allowed, they may issue county orders therefor as provided by law. * * *

"To represent the county and have the care of the county property and the management of the business

and concerns of the county, in all cases where no other provision is made by law." § 30-605.

Claims against the county must be presented for "audit and allowance" to the board, and all claims when allowed are paid by a county warrant or order drawn by the board on the county treasurer, or by certificates of indebtedness. §§ 30-102, 30-104. Certificates of indebtedness may be issued "for the current expenses of the county" when "there are not sufficient funds in the county treasury to meet the obligations of the county as they mature." § 30-104. They are in effect orders or warrants on the treasurer for payment when funds for that purpose are available.

When a claim against a county is disallowed, the claimant may appeal to the district court. §§ 30-611, 30-612. But the decision of the county commissioners rejecting a claim is not treated as an adjudication which, if not appealed from, becomes binding on the parties. The claimant by failing to appeal does not lose his right, but may sue on his claim. Boswell v. County Commissioners, 1 Wyo. 235. The action of the board rejecting a claim, may later be reconsidered and the claim allowed. Appel v. State, 9 Wyo. 187, 203, 61 Pac. 1015. There is no provision for an appeal by anyone on behalf of the county from a decision allowing a claim. A decision of allowance is followed at once by the issuance and delivery of a warrant or certificate, as in the present case. The warrant or certificate is *prima facie* evidence of indebtedness. In re Apportionment of Indebtedness, 8 Wyo. 1, 35-37, 54 Pac. 1073; Appel v. State, supra (at p. 197). In this respect there is no reason for any distinction between warrants of cities, school districts and counties. See School District v. Western Tube Co., 13 Wyo. 304, 335, 80 Pac. 155; 5 Wyo. 185, 38 Pac. 922.

The board exercises all the corporate and administrative powers of the county, including of course the making of contracts for services. When it has made a legal contract, we assume it can take no *ex parte* action that can have the effect of depriving a party to the contract of any vested right under the contract. We may assume in this case that the resolution of September 7 did not have the effect of working a rescission of the contract of June 7. The board acts for the county not only in making the contract but also in performing, which, as in this case, may mean paying the money when due. It may refuse to perform without impairing the obligation of the contract. See St. Paul Gas Light Co. v. St. Paul, 181 U. S. 142, 148-149. The allowance of a claim based on the contract and the issue and delivery of an order on the treasurer are steps in performance of the contract by the county. The order on the treasurer, while outstanding, will in certain collateral proceedings be conclusive evidence of an indebtedness by the county. In re Apportionment of Indebtedness, 8 Wyo. 1, 35, 54 Pac. 1073. We may assume that the order in the hands of the payee or his assignee cannot by *ex parte* order of the board be cancelled, so as to deprive the holder of his right to rely on it as *prima facie* evidence of indebtedness. The contract, however, has not been fully performed by the county until the order is paid from funds of which the board has control. In a similar transaction between individuals there could be no doubt that the maker of the order would have power to direct his agent to refuse payment. We cannot believe that the actions of the board in the performance of a contract which result in the issuance of mere non-negotiable promises to pay can be given the conclusive effect of judgments, or any effect inconsistent with the power of the county to stop payment on the certificates if its board claims to have a defense.

It is well known that boards of commissioners must often act hastily and on inadequate information. Public policy would seem to demand that they have power to prevent payments on claims to which the county may have a defense. See, Sears v. Stone County, 105 Mo. 236, 243; Matter of Equitable Trust Co. v. Hamilton, 226 N. Y. 241, 246, 123 N. E. 380; State v. Funk, 105 Ore. 134, 199 Pac. 592, 209 Pac. 113, 25 A. L. R. 625. A suit to cancel the warrant, or to enjoin its payment, might be a very doubtful remedy. An unknown holder might be a necessary party. See, Savage v. Sternberg, 19 Wash. 679, 54 Pac. 611, 67 Am. St. Rep. 751; State v. Gormley, 40 Wash. 601, 82 Pac. 929, 3 L. R. A. (N. S.) 256. Relief might be denied on the ground that the county has an adequate remedy by defending a suit on the warrants. County of Ada v. Bullen Bridge Co., 5 Ida. 79, 47 Pac. 818, 36 L. R. A. 367, 95 Am. St. Rep. 180.

It is conceded that the answer would state a good defense if it pleaded facts showing illegality or fraud. The defendant, in the defense in question, does not undertake to plead fraud or illegality. She alleges that the Board of County Commissioners on September 7 adopted a resolution which, among other things, directed defendant to refuse payment of the certificates. The charges of fraud and illegality are made by the board in the resolution. Defendant does not even allege that those charges are true, and we do not think it was any part of her duties to decide whether or not they were true. The resolution contains recitals sufficient, we think, to inform the defendant, as county treasurer, that the county itself through its board of commissioners was contending that it had a defense or defenses that might be urged in an action against the county on the certificates or on a claim for compensation for services. And when the resolution was thus pleaded, and admitted by the demurrer, the court, we think, was

justified in finding from the pleadings that it was not the duty of the treasurer to pay the certificates in disregard of the direction of the board. It appeared that the claims were allowed in advance of performance of the services contracted for. It was charged that the services were unnecessary, and for the purpose of opposing the interests of the county; that in the actions in which the services were to be performed the attorneys represented other defendants whose interests were opposd to the interest of the county, and that the fees agreed to be paid were exorbitant and extortionate. In general terms it was charged that the whole transaction was illegal and fraudulent. The attorneys were discharged while apparently the cases which they were employed to defend were still pending, and before the contract on their part was fully performed.

It is probably true, as plaintiff contends, that the resolution would be insufficient as a pleading of a defense of fraud. It may be true, also, that it does not state with sufficient particularity facts to show illegality. But the resolution itself is not a pleading, and we have seen no authority that would justify us in holding that it should have been disregarded by the treasurer merely because it did not contain allegations that would have been necessary to support charges of fraud or illegality in a pleading. Even if the general charges of fraud and illegality should be disregarded, it would be difficult to dispose in such summary way of another defense suggested by the resolution, and which, under Petters & Co. v. Town of Rock River, supra, might be relied on. If, as charged, the attorneys "represented other defendants in said actions whose interests were and are adverse to those of Natrona County," it is likely the discharge of the attorneys before they had fully performed their contract was justified, and if their discharge was justified they may not be entitled to the whole amount agreed to be paid in advance "as

retainer fees and for and on account of legal services"
but only to the reasonable value of the services actually
performed.  We, of course, are not expressing an opin-
ion on any question that may be raised by defenses
that the county may plead if it hereafter be sued by
the holder of the certificates.  In our view, the resolu-
tion of the board need not be treated as a pleading.  It
was justification for defendant's refusal to pay the
certificates if it gave notice that the county was for-
bidding payment on the ground that it had a defense
which it should have an opportunity to present in an
action to which it is a party.  Perhaps, on authority of
some of the cases cited below the resolution went much
further than necessary.  That the county had such a
defense might have been inferred from the mere direc-
tion to the treasurer to refuse payment, or from the
fact that the board claimed the right to rescind the
allowance as previously made.  The present case may
be disposed of by holding that the treasurer ought not
to be coerced by mandamus to pay certificates when
payment is forbidden by a resolution of the board
showing that the county may have a defense, and that,
in such a case, it is not material that the recitations of
the resolution do not meet the requirements of a
pleading.

The plaintiff, however, contends that if the county
has a defense to the certificates of indebtedness, the
treasurer, when required to answer in mandamus,
should have pleaded that defense in order that it might
be litigated in the mandamus action. Three Washington
cases are cited to show that in at least one jurisdiction
suit cannot be maintained on a municipal warrant, but
that the sole remedy is by mandamus action in which
all defenses may be tried.  Cloud v. Town of Sumas,
9 Wash. 399, 37 Pac. 305; Abernethy v. Town of Med-
ical Lake, 9 Wash. 112, 37 Pac. 306; Bacon v. City of
Tacoma, 19 Wash. 674, 54 Pac. 609.  It may be that

this is a logical rule in those jurisdictions where, as in Washington, the warrant has the conclusive effect of a judgment. The Supreme Court of Oregon in Goldsmith v. City of Baker City, 31 Ore. 249, 49 Pac. 973, thought that Cloud v. Town of Sumas, supra, stood alone in holding that the remedy on a warrant was exclusively by mandamus. The rule announced in the Washington cases may be unobjectionable when applied, as in Bacon v. City of Tacoma, supra, to cases where the municipal corporation itself is not making any objection to payment of the warrants (see Board of Education v. Jasper, 193 Ky. 222, 235 S. W. 366), but we think it cannot be applied in this state to a case like that at bar.

We may concede that, if the board of county commissioners were not objecting to payment, and the treasurer refused payment because she believed the certificates were void, she, when sued in mandamus, should be required to plead the facts showing invalidity, and the issue so raised would be tried in the mandamus case. That may be the effect of our decision in Appel v. State, supra. And see, State v. Clark, 116 Minn. 500, 134 N. W. 129, 39 L. R. A. (N. S.) 43.

When, however, the board makes an order forbidding payment, claiming a defense on behalf of the county which it represents, we think there is no good reason for requiring the treasurer to assume the duty of alleging and proving the county's defense, except, perhaps, in those jurisdictions where the allowance of the claim is given the effect of a judgment. Plaintiff, in support of its contention on this point, cites two cases in which mandamus was issued to require ministerial officers to issue warrants after the board had undertaken to reconsider its action allowing the claims. In both these cases it was apparently decided that a defense claimed by the county or city should be deter-

mined in the mandamus case. State ex rel. Manix v. Auditor, 43 Oh. St. 311, 1 N. E. 209; McConoughey v. Jackson, 101 Calif. 265, 35 Pac. 863.

In the Ohio case a contract for the purchase of real property by the county had been fully performed by the vendor by delivery of a deed which had been accepted by the county and placed of record, and an order reciting these facts directed the auditor to issue a warrant for the purchase price. Thereafter the county commissioners attempted by resolution to rescind previous resolutions purchasing the land and ordering the warrant. The auditor refused to issue the warrant, and by mandamus was compelled to do so. The case was not decided on the pleadings, but after the taking of evidence from which it was found that the contract was valid and fully performed by the vendor; that there were no considerations of public policy, fraud, abuse of discretion, imposition or failure of consideration. It seemed clear to the court that in an action at law against the county for the purchase price there could be no defense and that in an action of specific performance the commissioners could answer that they had fully performed the contract on their part. Upon the facts it seemed to be clear that the relator was entitled to his money, but relief by mandamus was based on grounds not so free from doubt. It was apparently held not only that the resolution ordering the issuance of a warrant had the effect of a judgment, but also that the rescission of the resolution impaired a contract right of relator. There was a vigorous dissent by two justices. In the dissenting opinion views that seem to us to be in accord with principles applicable to the case at bar were stated thus:

"I wish also to express my unqualified dissent to the proposition that the right of the relator to demand and receive the purchase price of this sale is *res adjudicata* —that the order of the commissioners upon the auditor

to draw a warrant on the treasurer therefor in favor of relator has the force and effect of a judgment at law, which can not be collaterally impeached or modified by the commissioners after the term at which it was made. I deny that the order of the board of commissioners has any such force and effect. Instead of acting judicially in the matter, it was simply acting as a contracting party, not in making, but in executing the contract. And the order of revocation was not a rescission of the contract, but a refusal to execute it. If the right of the auditor to pass upon grounds of revocation did not exist, the ground upon which the revocation was made is immaterial in this action."

We note that in a later case in Ohio, mandamus to compel the issuance of a warrant was refused because of the pendency of an injunction action against the auditor to prevent the issuance of the warrant, though the relator in mandamus was not a party to the injunction case and no order of injunction had been issued. State ex rel. v. Zangerle, 126 Oh. St. 247, 185 N. E. 69. And see, Looker v. State ex rel. Dillian, 127 Oh. St. 413, 188 N. E. 753.

In McConoughey v. Jackson, supra, mandamus was issued to compel a city clerk to countersign and deliver a warrant in payment of a claim that had been allowed by the city board of trustees. The answer of the clerk alleged, among other things, that "the board of trustees repealed and rescinded the allowance of the claim and order to draw the warrant"; and "that the matter is still under consideration by the board of trustees" who "determined the warrant had been ordered drawn through mistake, inadvertence and misapprehension, rescinded the former action, and ordered that the warrant" be cancelled. It was held on demurrer that the answer was insufficient, and on appeal the decision was affirmed. The court followed earlier California cases holding that the allowance of the claim was a judicial act, and decided that mandamus should issue in the

absence of a properly pleaded defense to the claim "treated as a contract."

In those jurisdictions where the allowance of a claim is not given the effect of a judgment, the cases support the view that when a municipal board of audit has ordered the issuance of a warrant and thereafter has rescinded its order or directed the treasurer not to pay the warrant, the treasurer is justified in refusing payment without deciding for himself that the board had sufficient grounds for making the order by which it forbids payment. The court in denying mandamus in such cases does not decide that the county has a good defense, but only that the last order should be obeyed until the municipal body has an opportunity to present its defense in a proceeding to which it is a party.

In Matter of Equitable Trust Co. v. Hamilton, 177 App. Div. 390, 164 N. Y. S. 58, affirmed 226 N. Y. 241, 123 N. E. 380, it was held that mandamus would not issue to compel the county treasurer to pay a claim after its audit and allowance by the board of supervisors had been rescinded by the same board. The court said (226 N. Y. 245) that its decision did not "impair the efficacy of the principle that *quasi-judicial* action, when the statute intends it to be final, may not thereafter be revoked." It was held that the legislature did not intend that "audits should be irrevocable as against the better judgment of the auditors." The court did not decide that the county had a defense. The ground for the rescission of the allowance was that the claim was "apparently in excess of a reasonable charge" and was audited "without full consideration of the facts."

Frankl v. Bailey, 31 Or. 285, 50 Pac. 186, 188, was mandamus to compel the county treasurer to pay warrants issued on order of the board of county commissioners on a compromise of a claim for services rendered the county. The petition showed that after

the warrant had been assigned to the plaintiff, the county court, without notice to the payee or holder, made an order "directing the treasurer not to pay such warrant." The reason for this action was not disclosed. The court held the petition demurrable because it showed that the treasurer was justified in refusing to pay the warrant. It was assumed that orders of the county court, while acting as fiscal agents of the county, might have the force and effect of accounts stated as against the county, and in the absence of fraud or mistake, fix its liability; but held that they do not have the binding effect of judgments so as to prevent the county from refusing to observe the obligations thereof. The court said, among other things:

"Now the county court, having charge of the county funds, has directed the county treasurer not to pay this alleged obligation of the county, which is an indirect way of disavowing the county's liability; and, as the warrant is not based upon an order having the binding effect of a judgment against the county, we can see no reason why the treasurer is not precluded by the prohibitory order from using the county funds in discharge of the warrant. It is the duty of the treasurer to disburse the funds upon 'the proper orders, issued and attested by the county clerk,' but here is a warrant which the court has determined—and we must presume for some legitimate reason—should not be paid, and therefore not proper to be honored by the treasurer."

In Commonwealth ex rel. v. Sholtis, 24 Pa. Super. Ct. 487, the court reversed a judgment awarding mandamus to compel a borough treasurer to pay a warrant regularly issued on a claim allowed by the council of the borough. The treasurer refused to pay the order after he had been notified that it was "illegal and void; that the amount was not due" the payee, and that the council had reconsidered its action ordering the warrant. It was held that these facts justified the refusal to pay, and was said that "their truth or falsity, as

well as their legal effect, should be legally determined before a final order is made requiring the borough to pay." Commonwealth ex rel. v. Philadelphia, 176 Pa. 588 was cited. In that case it was decided that mandamus should issue to require the controller of a city to sign a warrant issued in payment of a claim allowed by the board of education, but the court said: "Had the board of education at any time indicated that there was any defense to this claim, it is clear that there could be no remedy by mandamus, but only by suit prosecuted to judgment in the ordinary course of law. But they have not done so. The only contest comes from the controller, and his grounds of objection, set out at length in his answer, show that none of them was founded on matters within his discretion."

In Burke v. Gromley, 79 N. J. L. 259, 80 Atl. 483, a city board had audited and ordered paid a bill of plaintiff for work and materials. A warrant was made out by the city clerk, but before it was signed by the comptroller a new administration had come into power, and the new board, upon representation of the mayor that the plaintiff's claims were "grossly exorbitant," rescinded the resolution approving the claims, and directed the city clerk to cancel the warrants. The warrants having been cancelled, plaintiff sought mandamus to compel the issuance of new warrants in accordance with the original resolution allowing his claims, contending that that resolution was a final adjudication. Mandamus was refused, the court saying:

"It is true there are cases in other jurisdictions which hold that a proceeding of that kind is final, but I think I ought not so to hold in the absence of any binding decision in this state. It is settled by a decision of our Court of Errors and Appeals that a taxpayer may enjoin the payment of an unjust bill by a city, although the city authorities are willing to pay it. Lodor v. McGovern, 3 Dick. Ch. Rep. 275. The effect of that decision is to deprive the action of the city

authorities of the element of finality which is relied upon in this case by the relator; for if a taxpayer may bring a bill in equity for an injunction to restrain the payment until the right thereto shall have been established by a suit at law, it is a necessary conclusion that the city authorities themselves would have the right to review their own prior action in case their approval of the bill was wrongful. Whether in fact the charges are grossly exorbitant, as the mayor asserted and as the new board seems to have thought was at least probable, cannot be decided on this application. No evidence has been taken upon the subject, and while there is a presumption in favor of a bill that has been duly audited (Butts v. Hoboken, 9 Vroom 391), there is an equal presumption in favor of the validity of the action of the new board. Which board was right can only be determined by an action at law."

Murphy v. Reeder Township Treasurer, 56 Mich. 505, 23 N. W. 197, was mandamus to a township treasurer to pay an order drawn on him by the township board. The treasurer in his answer admitted his refusal to pay and gave as his reasons (1) a resolution of the township board directing him not to do so, and (2) he had no money in his hands. The answer was not controverted, and the court held that as the answer must be taken as true, mandamus should be withheld. It may be thought that this case is not satisfactory, as the court does not say that both reasons which the treasurer gave were good. We note, however, that the case is cited in support of the decision in State ex rel. Haley v. Dilworth, 76 Mont. 218, 246 Pac. 167, a similar action against the custodian of funds of an irrigation district, wherein it was held that a good defense was shown by allegations that the directors of the district had ordered the warrants not to be paid, and that payment of the warrants had been stopped by the district and its officers.

See, also, State ex rel. Bank v. Cook, 43 Nebr. 318, 61 N. W. 318; People ex rel. Harms v. Klokke, 92 Ill.

134; Dey v. Lee, 4 Jones L. (N. C.) 238; Tucker v. Justices, 12 Ire. L. (N. C.) 434.

In addition to the above mandamus cases there are at least two decisions that apply the same principles in actions against treasurers who paid warrants in disregard of orders directing them not to pay.

Harrison County v. Ogden, 165 Ia. 325, 145 N. W. 681, was an action by a county to recover from its treasurer the amount of a warrant paid by him. The county had agreed to pay $1500 on the purchase price of land for a poor farm and issued and delivered its warrant for the amount. Thereafter the members of the county board were removed from office and their places filled by others. The new board by resolution declared that the contract of purchase "is hereby rescinded, cancelled and declared void" (without stating the reasons) and ordered the treasurer to refuse payment of the warrant. Thereafter the treasurer paid the warrant to a bank and claimed credit therefor in the settlement of his accounts. The court held that it was the duty of the treasurer to refuse to pay the warrant. It was also held that the contract of purchase was *ultra vires,* but the duty of the treasurer to refuse payment is not put on that ground. The court said that the warrant was but the evidence of indebtedness— *prima facie* evidence that the county was legally indebted to the holder. It was the treasurer's authority for disbursing, but, before the disbursement was made, the order of disbursement was recalled, and, the warrant being based on the order of the board, the board, having control of county funds out of which warrants may be paid, had power to prohibit the treasurer from using the funds for that purpose. "It was not for him to determine whether the board could or did, rightfully rescind the order previously made, and any payment made by him thereafter was at his peril."

In County of Jackson v. Fayman, 329 Mo. 423, 44 S. W. (2d) 849, the county sued to recover from its treasurer the amount he had paid on a warrant which had been issued in payment of road construction work. Two years after the warrant was issued, but before it was paid, the county court made an order reciting that the warrant "be and the same is hereby cancelled and annulled and is no longer an obligation or liability of Jackson County." Thereafter the treasurer paid the warrant on being advised by the county counsellor that it was his duty to pay it on presentation unless it was illegal or fraudulently issued. It was not claimed that the road construction contract was invalid, but only that the warrant was issued on an excessive claim based on mistaken estimates of the amount of work charged for. It was held as in Harrison County v. Ogden, supra, and on similar grounds, that the treasurer's payment of the warrant after the county court's order annulling it was without authority and at his peril.

It is contended that in view of § 30-1114, the treasurer's duty to pay certificates valid on their face could not be affected by the resolution directing him not to pay. The cited section makes it a misdemeanor for the treasurer to "fail, neglect or refuse to pay any order presented to him for payment, there being then money in the treasury appropriated for that purpose, or from which by law the same ought to be paid." This statute cannot be given a meaning that would warrant punishment of a treasurer who refuses to pay in obedience to the order of the board. It must be construed with other statutes cited above which give the board general control of county property and business, and with section 30-1106 which provides that county moneys shall be paid out by the treasurer "only on orders or warrants issued by the board." A similar contention met with no favor in County of Jackson v. Fayman, supra, where

the court said (p. 441 of 329 Mo.) the order lost its vitality when the board that issued it had taken on itself the responsibility of annulling its action.

It is argued that, although the relator may have a remedy by suit against the county, mandamus is the only adequate remedy. Two reasons are advanced. First, that the certificates of indebtedness constitute a prior charge on revenues of the year, and the priority will be lost if relator is driven to a remedy by suit. No authorities are cited in support of the contention that the right to payment out of the revenues of the year will be lost by failure to require payment by mandamus. The cases we have examined indicate the contrary. First National Bank v. Martin, 7 Kan. App. 739, 52 Pac. 580; Monroe v. Crawford, 9 Kan. App. 749, 58 Pac. 232; United States ex rel. Morton v. King, 74 Fed. 493. Our attention has been called to no allegation in the pleadings showing that a judgment against the county could not be collected. See Grand Island etc. R. Co. v. Baker, 6 Wyo. 369, 399, 45 P. 494, 34 L. R. A. 835, 71 Am. St. Rep. 926.

The second reason is that under § 89-4513 the relator in mandamus may recover damages that cannot be recovered in a suit against the county. In view of what has been said in the cases cited above this argument requires but scant notice. A treasurer ought not to be required to pay damages for refusing to pay after payment is stopped by the order of the board.

Mandamus is not the ordinary method of enforcing payment of a written promise to pay money. Its use for that purpose against officers of municipal corporations is on the ground that the holder of a warrant has the right to immediate payment from funds in the hands of the treasurer. Suit on the warrant that could only result in a judgment would be an unnecessary proceeding, as payment of the judgment might have to be

enforced by mandamus. See Ray v. Wilson, 29 Fla. 342, 10 So. 613, 14 L. R. A. 773. It is obvious that in a jurisdiction where the allowance of the claim is not given the effect of a judgment, these reasons for enforcing its payment by mandamus do not apply in a case where the corporation, not a party to the mandamus action, may have a defense to a suit on the warrant. In such a case we think the relator's remedy by suit against the corporation on the warrant is "a plain and adequate remedy in the ordinary course of law." The statute (§ 89-4504) declares that in that case mandamus must not issue.

We do not decide that there may not be cases in which mandamus to compel payment of a municipal warrant may issue, notwithstanding a claim of a defense by the municipal corporation, if it appears affirmatively that the claim is not made in good faith. See Barry County v. Supervisors, 33 Mich. 497; State ex rel. v. Zangerle, 126 Oh. St. 247, 185 N. E. 69. State ex rel. Manix v. Auditor, 43 Oh. St. 311, 1 N. E. 209, noticed above, may be considered such a case.

The judgment will be affirmed.

*Affirmed.*

BLUME and RINER, JJ., concur.